16 P.3d 35 (2001)
104 Wash.App. 307
Edward L. DANZER, dba Danzco, Appellant,
v.
DEPARTMENT OF LABOR AND INDUSTRIES, Respondent.
No. 24711-9-II.
Court of Appeals of Washington, Division 2.
December 8, 2000.
As Amended and Publication Ordered January 19, 2001.
*37 Michael E. Ferrell, for Appellant.
Lisa Daeley Kelley, Dept. of Labor & Industries, Tacoma, for Respondent.
*36 SEINFELD, P.J.
The Department of Labor and Industries assessed a penalty against Edward L. Danzer, doing business as Danzco, for failure to abate a previously cited violation of the Washington Industrial Safety and Health Act. The Board of Industrial Insurance Appeals affirmed the penalty assessment and the superior court affirmed.
Finding that the Board correctly considered the 1995 failure to abate citation, that Danzco was not denied due process or equal protection rights, and that substantial evidence supports the Board's conclusion as to the amount of the assessment, we affirm.

FACTS
Danzco manufactures equipment used in the timber industry. At the time of the citation, Danzco's employees were using an unguarded hand held grinder with a Type 28 grinding wheel to smooth welding seams. In doing so, they held the grinder flat against the seam surface. This process, which Danzco calls "flat grinding," produces a smoother surface than can be obtained by holding the grinder at an angle. The presence of a protective guard forces the user to hold the grinder at an angle and prevents flat grinding.
On June 21, 1994, the Department cited Danzco for failing to provide tongue guards on pedestal grinders and for failing to provide safety guards on hand held grinders, a violation of WAC 296-24-66007.[1] The Department assessed a penalty of $125 for each violation. Danzco appealed this citation.
Upon receiving Danzco's appeal, the Department reassumed jurisdiction and issued a Corrective Notice of Redetermination (CNR) affirming the 1994 citation and penalty assessment. The CNR indicated that Danzco had abated the tongue guard violation and changed the abatement date for the safety guard violation to August 30, 1994. Danzco did not appeal the CNR, and the 1994 citation became final.
On August 23, 1995, Department inspectors, Kenneth Wetzel and Michael Burt, reinspected Danzco and discovered that Danzco's employees were still using hand held grinders without safety guards. Because Danzco had failed to abate the previously cited safety violation, the Department issued a failure to abate citation. The Department assessed a $42,000 fine.
Danzco appealed the failure to abate citation. The Department received this appeal on October 4, 1995.
The Department then issued a notice of reassumption of jurisdiction on October 16 and held a reassumption hearing on October 31. On November 17, more than 30 working days after it received notice of Danzco's appeal, the Department issued a CNR affirming the failure to abate citation and changing the abatement date from November 24 to December 18, 1995. Danzco appealed this CNR.
On September 16, 1996, Danzco moved that the Board dismiss the October 16, 1995, notice of reassumption of jurisdiction and strike the ruling from the reassumption hearing. Danzco asserted that the Department had lost jurisdiction over the failure to abate citation because it failed to resume jurisdiction within the statutory time limit. Danzco asserted that the only remaining valid order was the 1994 citation.
The Board found that the CNR was invalid and that the Department had lost jurisdiction over the failure to abate citation because the Department had failed to complete action on *38 the CNR within 30 days of Danzco's appeal, as mandated by RCW 49.17.140(3).[2]
The Board determined that because the Department had lost jurisdiction over the failure to abate citation, the proper remedy was to allow Danzco to appeal the failure to abate citation directly to the Board for a hearing on the merits. The Board disagreed with Danzco's assertion that the only valid order was the 1994 citation.
In its petition to the Board, Danzco argued, as it does here, that (1) the Board did not have jurisdiction over the failure to abate citation; (2) the only valid order was the 1994 citation; and (3) by allowing the Board to consider the failure to abate citation, the Board denied Danzco due process and equal protection.
At its hearing on the failure to abate citation, the Board heard testimony from Department employees and a consulting engineer about the risks of using an unguarded grinder. This testimony established that safety guards are necessary on grinders to protect users from flying debris should the grinding wheel fragment during use and to protect the users from contact with the grinding wheel should the machine bind and "kickback" toward the user.
Two Danzco employees testified that they regularly used grinders without guards and that they would be unable to achieve the same quality work if the guard was attached. The employees also testified that they had received training on the use of the grinders and that Danzco issued them protective clothing, including hats, safety boots, gloves, leather aprons, face shields, and hearing protection.
Both employees testified that they had never been injured while using the grinders without guards and were unaware of anyone else being injured using an unguarded grinder. But one of the employees had recently been injured when using the grinder for sanding; the sanding disk and its underlying soft sanding wheel had fragmented. The employee testified that he did not believe that a guard would have prevented this injury.
Danzer testified that a guard would prevent his employees from performing the same quality of work and would not provide adequate protection. He also said that he could not afford to use alternative equipment that meets the safety standards and that he must use the grinders without guards if he wants to make a living. He claimed that none of his workers had been injured while using an unguarded grinder and that, based on his own evaluations, the grinding wheels are safe to use without the guards unless they are damaged.
Danzer further asserted that Danzco is the only business in the industry using the flat grinding method so he knows more about the method and the risks involved than the grinder manufacturer, ANSI, and state regulators, and he believed he had taken adequate steps to protect his employees by providing them with protective clothing. He said that he had requested a variance, but that the Department had denied his request.
The Board denied Danzco's petition and Danzco appealed to superior court. Later, he filed a motion to supplement the record or, in the alternative, for consideration of evidence outside the record. But the scheduled hearing on the motion was canceled and apparently never renoted. The record does not show if the superior court ruled on this motion.
*39 The superior court affirmed the Board's findings on April 30, 1999. Danzco now appeals.
I. JURISDICTION OF THE BOARD
Danzco appears to challenge the Board's conclusion of law 1:
The Department of Labor and industries [sic] failed to issue the Corrective Notice of Redetermination within 30 working days as required by RCW 49.17.140(3) and, accordingly, lacked jurisdiction to issue that corrective notice (Erection Company v. Department of Labor and Industries, 121 Wash.2d 513 [852 P.2d 288] (1993)). The Board of Industrial Insurance Appeals has jurisdiction over the parties and the subject matter of the employer's appeal of Citation and Notice No. XXXXXXXXX, issued September 13, 1995.
Danzco argues that because the Department failed to complete its redetermination within 30 working days of reassuming jurisdiction, the original 1994 citation was the only valid Department order and, thus, the only item before the Board. Danzco argues that Erection Co. v. Dep't of Labor & Indus., 121 Wash.2d 513, 852 P.2d 288 (1993), establishes that once the Department loses jurisdiction over the redetermination, the only valid order is the "original" citation.
Chapter 49.17 RCW, the Washington Industrial Safety and Health Act (WISHA), authorizes the Department to issue citations and assess penalties against employers for safety violations. RCW 49.17.120; RCW 49.17.130; RCW 49.17.180; Erection Co., 121 Wash.2d at 517, 852 P.2d 288. The employer has the right to appeal a citation or penalty assessment within 15 working days. RCW 49.17.140(1); Erection Co., 121 Wash.2d at 517, 852 P.2d 288.
When an employer notifies the Department that it intends to appeal, the Department may either: (1) forward the appeal directly to the Board or (2) reassume jurisdiction over the matter appealed to attempt to resolve any disputes before forwarding the appeal to the Board. RCW 49.17.140(3); Erection Co., 121 Wash.2d at 517, 852 P.2d 288. If the Department chooses to reassume jurisdiction, it must complete the redetermination and issue a CNR within 30 working days. RCW 49.17.140(3); Erection Co., 121 Wash.2d at 519, 852 P.2d 288. If the Department fails to complete the redetermination within the 30 day period, the Department loses jurisdiction over the claim and must forward the appeal to the Board. RCW 49.17.140(3); Erection Co., 121 Wash.2d at 519, 852 P.2d 288.
In Erection Co., the petitioner appealed a citation for several safety violations. 121 Wash.2d at 515, 852 P.2d 288. The Department notified the petitioner of its intention to reassume jurisdiction and issued a CNR after the 30 day period elapsed. Erection Co., 121 Wash.2d at 516, 852 P.2d 288. The petitioner appealed. Erection Co., 121 Wash.2d at 516, 852 P.2d 288.
The Washington Supreme Court held that the redetermination was invalid because the Department lost jurisdiction over the claim when it failed to complete its redetermination within the statutory 30-day period. The Supreme Court reinstated the petitioner's original appeal and remanded the case back to the Board for further proceedings. Erection Co., 121 Wash.2d at 523, 852 P.2d 288.
Erection Co. does not establish that the failure to abate citation is invalid if the Department fails to complete the redetermination within the statutory period. Erection Co. merely establishes that when the Department fails to complete a redetermination within the statutory period, the Department loses its jurisdiction over the matter appealed and the Department's redetermination is invalid. 121 Wash.2d at 523, 852 P.2d 288. If the redetermination is invalid, the petitioner's appeal goes directly before the Board as if the Department had never attempted to reassume jurisdiction. See Erection Co., 121 Wash.2d at 523, 852 P.2d 288.
Here, the holding in Erection Co. required the Board to ignore the Department's untimely redetermination and consider Danzco's appeal as if the Department had never attempted to reassume jurisdiction. See Erection Co., 121 Wash.2d at 523, 852 P.2d 288. Erection Co. does not limit the Board's authority to review the failure to *40 abate citation and the related penalty assessment.
Danzco also appears to challenge the 1994 citation. The Department asserts that under RCW 49.17.140(1), the 1994 citation became final and unappealable when Danzco failed to appeal the citation within 15 days of receipt of the Department's August 24, 1994, CNR affirming the citation and the penalty assessment.
Danzco asserts that the failure to abate citation incorporates the 1994 citation, thereby "reactivating" the 1994 citation and allowing for its challenge on appeal. Danzco asserts that the reference to the "original citation" in Erection Co. dictates this outcome.
But in Erection Co., there was only one citation. Thus, the Erection Co. court's reference to the "original citation" referred to the citation on appeal. Here, there were two citations and Danzco needed to appeal the corrected 1994 citation within 15 days. RCW 49.17.140(1);[3]Erection Co., 121 Wash.2d at 517, 852 P.2d 288. He failed to do so. Thus, the citation became final and Danzco lost all rights to appeal it to the Board.
Danzco next argues for application of the doctrine of equitable tolling to allow it to appeal the 1994 citation. Danzco asserts that equitable tolling should apply because the Department violated its own rules when it failed to complete its redetermination of the failure to abate citation in a timely manner. Danzco cites Secretary of Labor v. Barretto Granite Corp., 830 F.2d 396 (1st Cir. 1987), and Capital City Excavating Co. v. Donovan, 679 F.2d 105 (6th Cir.1982).
The doctrine of equitable tolling permits the court, under "appropriate circumstances," to allow an action to proceed even though a statutory time limit has elapsed. Millay v. Cam, 135 Wash.2d 193, 206, 955 P.2d 791 (1998); Douchette v. Bethel Sch. Dist. No. 403, 117 Wash.2d 805, 811, 818 P.2d 1362 (1991). "Appropriate circumstances" include bad faith, deception, lack of notice of filing requirements, or false or misleading assurances by the Department, and the exercise of diligence by the employer. Millay, 135 Wash.2d at 206, 955 P.2d 791; Douchette, 117 Wash.2d at 811, 818 P.2d 1362.
There are no Washington cases applying the doctrine of equitable tolling or equitable estoppel in this context. But federal precedent interpreting the Occupation Health and Safety Act (OSHA) is instructive. See Aviation West Corp. v. Dep't of Labor & Indus., 138 Wash.2d 413, 424, 980 P.2d 701 (1999); Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 147, 750 P.2d 1257, 756 P.2d 142 (1988).
Federal courts have applied the doctrine of equitable tolling in cases where a petitioner cited for an OSHA violation has failed to file a timely appeal. In both Barretto Granite Corp. and Capital City Excavating Co., the courts held that the 15 day period to file an appeal may be extended under circumstances that justify the application of the doctrine of equitable tolling. Barretto Granite Corp., 830 F.2d at 399; Capital City Excavating Co., 679 F.2d at 110. The courts stated that equitable tolling was appropriate if the employer could show that the delay in filing was caused by the agency's deception, the agency's failure to follow proper procedures, or other agency actions that misled or confused the petitioner. Barretto Granite Corp., 830 F.2d at 399; Capital City Excavating Co., 679 F.2d at 110.
In this case, Danzco has not identified any Department action that caused its failure to appeal the corrected 1994 citation. Nor does Danzco explain how the delay in the 1995 CNR prevented its appeal of the corrected 1994 citation. Thus, there is no basis to apply the doctrine of equitable tolling in this case.

*41 II. PENALTY ASSESSMENT
Danzco argues that the $42,000 penalty is excessive or arbitrary and capricious because it acted in good faith, requested a variance, and could not comply with the original citation for economic reasons and, further, no employees had been injured using the unguarded grinders. Danzco apparently challenges the Board's finding of fact 4 and conclusion of law 4:
Finding of fact 4:
The Department's penalty assessment of $42, 000 in Citation and Notice No. XXXXXXXXX is supported by its calculation of the severity and gravity of the violation, as well as by the employer's poor faith in failing to abate the violation.
Conclusion of law 4:
The penalty of $42,000 assessed in Citation and Notice No. XXXXXXXXX, is appropriate and should be affirmed.
1. Substantial Evidence
This court must determine whether there is substantial evidence to support the Board's findings and whether the Board's conclusion of law is appropriate based on these facts. RCW 49.17.150(1);[4]Young v. Dep't of Labor & Indus., 81 Wash.App. 123, 128, 913 P.2d 402 (1996). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. World Wide Video, Inc. v. Tukwila, 117 Wash.2d 382, 387, 816 P.2d 18 (1991).[5]
If, after receiving a citation, an employer fails to correct the violation within the period provided, the Department may assess a civil penalty of up to $7,000 per day for each day a violation continues. RCW 49.17.180(4). In determining the penalty, the Department must consider (1) the number of affected employees, (2) the gravity of the violation, (3) the size of the employer's business, (4) the good faith of the employer, and (5) the history of previous violations. RCW 49.17.180(7).[6]
The Department uses a worksheet that reflects these criteria.[7] Roger Dickey testified about how the Department uses the penalty worksheet and how it calculated the penalty against Danzco.
The Department first rates the potential severity of the injuries that the safety violation could cause and then rates the probability of such an injury, using a scale of 1 to 6 for each. The Department then multiplies the severity and probability factors to determine the "gravity" factor, a number between 1 and 36. This factor determines the base penalty for the violation.
The Department then adjusts the base penalty by (1) the employer's good faith (rated as excellent, good, fair, or poor); (2) the employer's size; and (3) the employer's claims history (rated as good, average, or poor). It then multiplies the adjusted base penalty by the number of days the employer has failed to abate the violation.
*42 The Department gave Danzco a severity rating of 4 and a probability rating of 3, resulting in a gravity factor of 12, and a corresponding base penalty of $2,000. It adjusted the base penalty as follows: (1) an increase of $400 for a showing of poor faith; (2) a decrease of $1,200 because of Danzco's relatively small size; and (3) an increase of $200 for a poor claims history, resulting in an adjusted base penalty of $1,400. The Department then multiplied this figure by 30, the failure to abate factor, for a total of $42,000.
Danzco appears to challenge (1) the severity rating, (2) the probability rating, (3) the good faith adjustment, and (4) the claims history adjustment. Despite the Department's assertion, Danzco denies that it is challenging the validity of RCW 49.17.180.
A. Severity
The Department determines the severity rating by determining the worst type of injury that is likely to occur. A severity rating of 4, assigned here, means that the potential injuries caused by a fragmenting grinding wheel or machine kickback would require actual medical attention rather than first aid, but they would not require hospitalization.[8] These injuries include lacerations, deep cuts, or eye injuries.
Danzco appears to argue that the severity rating is excessive because (1) no Danzco employee has ever been injured while using an unguarded grinder, and (2) the Department has failed to show that using a grinder without a safety guard is unsafe.[9]
Past history of actual injuries is irrelevant to this factor. The focus is on the extent of injury that can potentially result if an injury does occur. The testimony of George Reitmeier and Dickey supports the Board's conclusion that an employee could potentially receive injuries requiring medical attention should the grinding wheel fragment or should the grinder kickback and strike an employee.
Reitmeier, a consulting mechanical engineer who has studied the strength characteristics of grinding wheels, stated that safety guards are necessary because (1) the grinding wheels can break while in use and the fragments can injure the operator if the guard does not deflect them, and (2) the grinding wheel may come in contact with and cut the operator because there is no barrier between the operator and the spinning wheel. Reitmeier also testified that he often sees leg injuries with unguarded grinders.
Dickey, a Department employee, testified as to the consequences of not using a safety guard. He explained that when a grinding wheel fragments, the pieces leave the wheel at approximately 180 mph and could seriously injure an employee. Further, should the machine kickback, the grinding disk could *43 strike and injure the operator. Protective clothing and safety equipment do not provide as effective protection from these hazards as does a safety guard.
This testimony provides substantial evidence to support the severity rating of 4.
B. Probability
The probability rating is an indication of how likely an injury is to occur. Here, the Department's probability rating of 3 indicates that the Department believed that although there may not be an incident over a long period of time, there was a real substantial probability that sooner or later an injury would occur. The Department considers the violation's duration, the employee's proximity to the hazard, the employer's measures to prevent injury, the working conditions, the pace of the work, supervision of the hazard, and other factors.[10]
Danzco argues that the probability rating was incorrect because no Danzco employee has been injured while using an unguarded grinder and, according to its own "tests," the grinding wheel is unlikely to fragment unless it is damaged. But a probability rating of 3 does not require frequent incidents; there merely must be a real substantial probability that the wheel will either fragment or the grinder will bind up and kickback injuring an employee at some point. A purpose of WISHA is to prevent injuries to employees; an injury need not occur before the Department can act.
Again, both Dickey and Reitmeier testified that although the Type 28 grinding wheel seldom explodes, a damaged wheel could fragment. Dickey testified that a machine kicking back will injure an employee at some point in time. He further testified that the probability rating reflected the fact that the employees using the grinder were within two feet of the potential hazard and that Danzco would not resolve this long standing problem without Department intervention.
C. Good Faith
The Department rated Danzco's "good faith" as "poor." At the time of the Board's decision, there were no statutes or regulations defining good faith, as used in RCW 49.17.180(7).[11] But Board decisions, although not binding, offer some guidance. See In re Streamline, Inc., Bd. of Indus. Ins. Appeals No. 89 WO11(October 19, 1990).
In determining "good faith," the Board considers whether the employer: (1) took prompt action to understand and comply with the regulation, (2) cooperated with the investigation, (3) worked with the Department to resolve the problem, and (4) appeared committed to assuring a safe and healthful workplace. In re Potelco, Inc., Bd. of Indus. Ins. Appeals No. 98 W0138 (October 26, 1999); In re Bainbridge Cedar Prod., Inc., Bd. of Indus. Ins. Appeals No. 91 W164 (August 24, 1993); In re Streamline, Inc., No. 89 W011. The following factors indicate a lack of good faith: (1) conscious disregard of the risks, (2) delay in correcting the violation, (3) deceptive behavior, and (4) willful resistance to compliance. See In re Colf Constr., Bd. of Indus. Ins. Appeals No. 96 W318 (November 23, 1998); In re Olympia Glass Co., Bd. of Indus. Ins. Appeals No. 95 W445 (November 15, 1996); In re Streamline, *44 Inc., No. 89 W011. If an employer attempts to substitute its own judgment for the regulator's judgment as expressed in the safety regulation, the Department may consider the violation a willful violation. In re Colf Constr., No. 96 W318.
The record supports the "poor" rating on good faith. As Dickey testified, the evidence showed that Danzco (1) had not abated the hazard after a full year; (2) failed to appeal the 1994 citation; (3) was aware of the risks; and (4) continued to violate the code primarily for economic reasons.[12]
The record also supports the conclusion that Danzco was motivated by economic considerations. Danzco told Dickey that grinding without the guard allowed him to manufacture equipment more economically than his competitors, an advantage he would lose if forced to purchase equipment that complied with the safety regulations. Further, Danzco was not responsive to suggestions about other machines that could perform the same functions and comply with WISHA regulations.
Danzer testified that he did not feel obligated to comply if the Department ordered a correction that would harm Danzco's economic viability. He had determined that the protective clothing he provided his employees gave them sufficient protection from any hazards posed by his flat grinding method.
Danzco also argues that the assessment is excessive because Danzco's conduct is not comparable to the bad faith behavior the employer demonstrated in Reich v. Sea Sprite Boat Co., 50 F.3d 413 (7th Cir.1995). There, federal regulators issued the employer four citations for a safety violation. The employer failed to pay the citation for seven years, was held in contempt of court for this failure, refused to honor a settlement agreement, did not apply for variances, transferred operations to a new corporation, and drained and shuffled corporate assets in an attempt to avoid liability. Although Danzco's behavior is not as egregious as that in Sea Sprite, evidence of such extreme behavior is not necessary to support a poor good faith rating.
Thus, substantial evidence supports the Department's good faith rating.
D. History of Previous Violations
The Department gave Danzco a history rating of "poor," increasing the base penalty $200.[13] Danzco challenges this factor, arguing that it includes injuries not caused by unguarded grinders and that it fails to consider the good return to work rate of its injured employees.
A factor included in RCW 49.17.180(7) is "the history of previous violations." The statutory language does not limit the Department's consideration to only those injuries related to the named safety violation.
Dickey testified that 14 Danzco employees submitted seven injury claims during the year preceding the failure to abate citation. He acknowledged that Danzco's return to work rate was good but said the incident rate was high in comparison to other employers in the industry. This testimony supports the "history" rating.
2. Abuse of Discretion
Danzco also claims the penalty is excessive. We review the penalty amount for abuse of discretion. Long Mfg. Co., N.C., Inc. v. Occupational Safety & Health Review Comm'n, 554 F.2d 903, 908-09 (8th Cir.1977). Abuse of discretion occurs where the trial court's decision is arbitrary or rests on untenable grounds or untenable reasons. MacKay v. MacKay, 55 Wash.2d 344, 348, 347 P.2d 1062 (1959); State ex rel. Nielsen v. Superior Court, 7 Wash.2d 562, 577, 115 P.2d 142 (1941); In re Marriage of James, 79 Wash.App. 436, 440, 903 P.2d 470 (1995). *45 Danzco contends that the $42,000 penalty far exceeds penalties assessed against other employers for "less" serious violations, referring to an incident at the Kingdome in which a crane collapsed killing an employee, and the Department fined the employer $21,000. The Department responds that other penalties are irrelevant and are not part of the record.
The Department is correct. Although Danzco submitted a motion to the trial court to allow information regarding penalties against other employers, the trial court never granted this motion. Additionally, during the hearing before the trial court Danzco objected to the introduction of such testimony and the court sustained Danzco's objection. In any event, the penalties Danzco uses for comparison are not failure to abate penalties; they are citations for safety violations.
As the Department based its penalty calculation on the factors in RCW 49.17.180(7) and substantial evidence supports the calculations, they are not arbitrary or based on untenable grounds.
For these reasons and those discussed below, we affirm and remand the matter to the Department for further action consistent with the Board's proposed order and decision.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
HOUGHTON, J., and WILLIAMS, J.P.T., concur.
NOTES
[1] Although the Department cited Danzco for a violation of WAC 296-24-66007, this regulation merely establishes the exposure angle, location, and adjustment of the guard on a vertical portable grinder. As noted by the administrative law judge in his proposed order and decision, the actual guarding requirement is contained in WAC 296-24-66003(1): "[A]ll abrasive wheels shall be used only on machines provided with safety guards as defined in the following sections through WAC 296-24-66011."
[2] RCW 49.17.140(3) reads in part:

If any employer notifies the director that the employer intends to appeal the citation issued under either RCW 49.17.120 or 49.17.130 or notification of the assessment of a penalty issued under subsections (1) or (2) of this section, ... the director may reassume jurisdiction over the entire matter, or any portion thereof upon which notice of intention to appeal has been filed with the director pursuant to this subsection. If the director reassumes jurisdiction of all or any portion of the matter upon which notice of appeal has been filed with the director, any redetermination shall be completed and corrective notices of assessment of penalty, citations, or revised periods of abatement completed within a period of thirty working days.... In the event that the director does not reassume jurisdiction as provided in this subsection, the director shall promptly notify the state board of industrial insurance appeals of all notifications of intention to appeal any such citations, any such notices of assessment of penalty ... and in addition certify a full copy of the record in such appeal matters to the board.
[3] RCW 49.17.140(1) reads in part:

If, within fifteen working days from the communication of the notice issued by the director the employer fails to notify the director that the employer intends to appeal the citation or assessment penalty, and no notice is filed by any employee or representative of employees under subsection (3) of this section within such time, the citation and the assessment shall be deemed a final order of the department and not subject to review by any court or agency.
[4] RCW 49.17.150(1) reads in part: "The findings of the board or hearing examiner where the board has denied a petition or petitions for review with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive."
[5] The parties incorrectly ask us to apply the arbitrary and capricious standard. But that standard does not apply to a challenge to the Board's decision under WISHA. See RCW 34.05.030(2)(a) ("The provisions of RCW 34.05.410 through 34.05.598 shall not apply ... [t]o adjudicative proceedings of the board of industrial insurance appeals except as provided in RCW 7.68.110 and 51.48.131[.]"). RCW 34.05.410 through .598 is Part IV of the Administrative Procedure Act and pertains to adjudicative proceedings. RCW 7.68.110 applies to review of Board decisions under the crime victims' compensation program. RCW 51.48.131 applies to industrial insurance assessments and penalties. None of these exceptions apply here.
[6] "The director, or his authorized representatives, shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the number of affected employees of the employer being charged, the gravity of the violation, the size of the employer's business, the good faith of the employer, and the history of previous violations." RCW 49.17.180(7).
[7] The Department recently codified these requirements. See WAC 296-350. These regulations became effective on August 1, 2000. Although these regulations were not in effect at the time Danzco was cited, they appear to reflect the same standards the Department applied in 1995.
[8] Although not in effect in 1995, the current regulations define the severity ratings as follows:

6. Death from injury, illness or disease; injuries involving permanent severe disability; chronic, irreversible illness.
5. Permanent disability of a limited or less severe nature; injuries or reversible illnesses resulting in hospitalization.
4. Injuries or temporary, reversible illnesses resulting in serious physical harm (but less than 5 or 6 above) and may require removal from exposure or supportive treatment without hospitalization for recovery.
3. Injuries or illness would probably not cause death or serious physical harm, but violations have at least major impact and an indirect relationship to serious injury, illness or disease. Violations could have direct and immediate relationship to safety and health of employees. No need for medical treatment beyond first aid.
2. Nonserious or general violations of minor impact, including violations that have an indirect relationship to nonserious injury, illness or disease. No injury, illness or disease without additional violations.
1. No injury, and not likely to result in injury in the presence of other violations.
WAC 296-350-15025 (Table 1).
The severity rating is based on the most serious injury, illness, or disease that could reasonably result from a hazardous condition, and violations with severity levels of four or above are considered serious violations. WAC 296-350-15025.
[9] Danzco also asserts that the violation cannot be characterized as "serious" because the severity factor was rated as a 4, which Danzco asserts is "the lowest." Danzco misstates Dickey's testimony. Dickey did not testify that a rating of 4 was the lowest rating; he testified that a rating of 4 was the lowest rating at which an employee would require actual medical attention rather than just first aid.
[10] Although not in effect in 1995, the current regulation requires that the Department consider the number of employees affected when determining probability. The regulation also lists other factors the Department may consider, depending on the situation: (1) the frequency of employee exposure; (2) the number of times the same violation occurs in the workplace; (3) how close the employees are to the hazard; (4) the working conditions; (5) the employee's skill level; (6) the employee's awareness of the hazard; (7) the pace, speed, and nature of the task or work; (8) the use of personal protective equipment; (9) the amount of exposure to health violations; and (10) other mitigating or contributing circumstances. WAC 296-350-15030.
[11] Although not effective in 1995, the regulations now give guidance as to the meaning of "good faith" in this context:

No single factor determines good faith. Good faith is a reflection of your efforts before the inspection to provide a safe and healthful workplace for your employees and your efforts to comply with the standard violated. Your cooperation during the inspection may also be considered to the extent that it reflects your attitude toward complying with the cited standard, including immediate efforts to abate the identified hazard.
WAC 296-350-15040(1).
[12] During oral argument before this court, the Department concluded that Danzco had applied for a variance. Danzco's continued use of the unguarded grinders after the denial of the variance application indicates Danzco's intentional noncompliance.
[13] Although not in effect in 1995, the regulations now state that the history adjustment is a reflection of the employer's record of safety and health violations in the state of Washington, as demonstrated by previous citations and by injury and illness rates. WAC 296-350-15040(3).