FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 10

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ACTIVE CONSTRUCTION INC., | No. 44918-8-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — Active Construction, Inc. (ACI) appeals a Department of Labor and Industries (L&I) citation for a Washington Industrial Safety and Health Act of 1973[1] (WISHA) safety violation and the resulting penalty assessment. Specifically, the citation alleged that ACI failed to comply with WAC 296-155-657, which requires employers to provide cave-in protective systems in trenches that are at least four feet deep when the trench is not made entirely in stable rock. ACI argues that (1) the evidence was insufficient to establish exposure to a hazard, and (2) the evidence was insufficient to support the probability rating used to calculate the penalty. Because substantial evidence supports the industrial appeals judge's (IAJ) findings, we affirm.

---

[1] Ch. 49.17 RCW.

## FACTS

### I. INVESTIGATION

On November 10, 2010, ACI was working on a project in Tacoma that involved replacing an existing water main, fire hydrant, and street improvements. L&I safety and compliance officer Scott Orla McMinimy was driving by the worksite when he noticed a man, later identified as ACI employee Timothy Torresin, digging with a shovel in what appeared to be an unshored[2] trench that ran from the sidewalk out into the street. Although Torresin was six feet five inches tall, McMinimy could see only the man's shoulders and head, and he appeared to be "walking back and forth in the trench." Clerk's Papers (CP) at 197. McMinimy drove around the block, stopped in a parking lot near the work site, and started to photograph Torresin in the trench.

McMinimy told Torresin to get out of the trench; spoke to the foreman, Mark Lloyd Lillybridge; and took several more photographs of the trench. At the end of the trench nearest the sidewalk there was a shovel and a block that the new fire hydrant would rest on when it was installed; at the street end of the trench was a large valve. McMinimy measured the trench's depth at the sidewalk end and photographed this measurement; the trench was five feet seven inches deep at this point. Although one side of the trench appeared to be cut into a step-like ledge, the other side was straight; neither side was significantly sloped. There was no shoring inside the trench.

Based on his visual inspection and his belief that the soil in the area was "predisturbed" because of the trench's proximity to a preexisting fire hydrant, a sidewalk, and a building,

---

[2] "Shoring" is support placed inside trenches to keep the sides from collapsing. Other protective systems include "benching," which involves cutting step-like ledges into the walls of the trench to relieve pressure on the side walls, and "sloping," which involves cutting the trench walls at an angle.

McMinimy concluded that the trench was dug into "class C" soil rather than into "stable rock." CP at 148. Because this type of soil required some type of cave-in protection system if the trench was four feet or more deep, McMinimy issued a repeat serious infraction against ACI for violating WAC 296-155-657(1)(a).[3]

## II. LITIGATION

ACI challenged the citation, and the matter proceeded to a hearing before an IAJ. ACI argued that L&I had failed to establish exposure to a hazard because the employee was not working a part of the trench that was more than four feet deep and that L&I relied on speculation to determine the duration of the alleged risk exposure.

McMinimy, L&I's only witness, testified as described above. McMinimy also submitted 10 photographs from the worksite, and he testified that this type of violation was a serious violation because of the risk of collapse, which could result in hospitalization or death. McMinimy also testified that he had calculated the base penalty of $5,500 based on a "gravity" score of 24. CP at 153; see WAC 296-900-14010. He calculated the gravity score by multiplying a "severity"[4] rate of 6 (on a scale of 1 to 6) and a "probability"[5] rate of 4 (on a scale

---

[3] ACI had a prior citation for the same type of violation.

[4] "Severity" is a measure of the "most serious injury, illness, or disease" a violation is likely to produce. WAC 296-900-14010.

[5] "[P]robability rate" is a measure of the likelihood that an injury, illness, or disease will occur. WAC 296-900-14010. When determining this rate, WISHA considers several factors, including (1) the frequency and amount of exposure; (2) the number of employees exposed; (3) the number of times the hazard is identified in the workplace; (4) the proximity of the worker to the hazard; (5) weather and other working conditions; (6) employee skill level and training; (7) employee awareness of the hazard; (8) the pace, speed, and nature of the task; (9) the use of personal protective equipment; and (10) other mitigating or contributing circumstances. WAC 296-900-14010.

of 1 to 6).[6] CP at 152. In determining the probability rate, McMinimy considered, among other factors, "[t]he depth of the trench" and the employees that were exposed to the hazard. CP at 151. After making adjustments for the company's size and prior violations, the resulting penalty was $6,600.[7]

During cross-examination, McMinimy admitted that although he had attended a week-long training session on trenching and excavation, he was not a "certified safety professional," a "certified industrial hygienist," or a "competent person for trenching and excavation." CP at 163. He also stated that although he performed a visual test to determine the soil classification, there was no "specific protocol" for "soils classification" and he did not conduct any "manual" test or inspection. CP at 164-65. In addition, he testified that the slope ratio required would differ depending on the soil classification; a one-to-one slope is required for class B soils, a one-and-a-half-to-one slope is required for class C soils. McMinimy admitted that he had not measured the slope, but he asserted that he did not take a measurement because it was obvious that the sloping requirements were not met.

ACI presented testimony from Torresin; Lillybridge; and ACI's risk manager, Michael Draper. Torresin testified that he had measured the trench before he entered it, that the trench was less than four feet deep, that he was working only at the valve end of the trench, that he was only in the trench for about five minutes, and that he had been digging with a shovel at the valve end of the trench. He further testified that the block at the sidewalk end of the trench had just been "drop[ped] in," that he did not know if the shovel at that end of the trench was the one he

---

[6] See WAC 296-900-14010.

[7] See WAC 296-900-14015 (base penalty adjustments). Because ACI challenges only the probability factor, we do not explain these adjustments in detail.

had been using, that the trench was deeper at one end than it was the other, and that the sidewalk end was approximately five feet seven inches deep. CP at 212.

Lillybridge testified that he had learned about soil classifications in "trench classes" at his shop and that he would classify the soil at this job site as class B soil because class C soil is sandier, contained more gravel, and this soil was "pretty firm, hard clay." CP at 230. He also opined that the soil was not "predisturbed soil" because it "hadn't been touched for years, and there [were] no indications of ditches." CP at 240. Lillybridge stated that if the soil was class B soil, it needed to have "benching, shoring, or a one-by-one sloping system" if the trench was at least four feet deep. CP at 247.

As to the trench depth, Lillybridge testified that the area around the valve was "[r]ight around four feet," but he admitted he had not measured the trench depth himself. CP at 245. He also stated that although the trench's bottom was level, the ground was higher towards the sidewalk but that there was no reason for anyone to go to the sidewalk end of the trench.

Draper testified that to classify the soil, there should be at least one visual and one manual analysis. He also testified that if the soil was class B soil, the slope would need to be "[o]ne to one." CP at 268. In addition, he testified that the relevant area for the depth measurement was where the worker was working and that the risk exposure also depended on where the employee was working. He stated that he would have given this violation a probability score of two or one depending on the length of time the employee was exposed to any risk.

The IAJ issued a proposed decision and order affirming the violation and corrective notice of redetermination. The proposed decision and order described the testimony outlined above and contained the following findings of fact:

2.    On November 10, 2010, [ACI], failed to implement any protective systems to protect employees in a trench at their excavation site in 6th Avenue and N. Fife Street, Tacoma, WA 98409. The excavations were not in areas made entirely in stable rock. The excavation trenches were deeper than 4 feet.

3.    On June 27, 2008, [ACI], was cited by [L&I] for a violation of [WAC] 296-155-657(1)(a). . . .

4.    On November 10, 2010, . . . in the early morning hours a safety inspector with [L&I] advised [ACI], through Mr. Lillybridge, the competent person on site, that the excavation required a trench box to protect employees entering the trench from the hazard of cave-ins. During the inspection, Mr. Torresin an employee of [ACI], was found in the trench, without the trench box for protection, working on a valve. The probability an accident could occur was very high rated 4 on a scale of 1 to 6 and could have resulted in severe permanent disability or death for a severity rating of 6, yielding a gravity rating of 24. The employer had an "average" history regarding workplace safety and its good faith was "fair." The company employed less than 100 workers. [ACI], intentionally disregarded their employees' safety when Mr. Toressin [sic] entered the trench without protection and performed work on the valve.

5.    On November 10, 2010, [ACI], committed a violation of WAC 296-155-657(1)(a). The violation was appropriately designated a repeat serious violation. The penalty, for the violation . . . is appropriately calculated at $6,600.

CP at 353.

After the Board of Industrial Insurance Appeals (Board) denied review of the IAJ's proposed decision and order and the IAJ's decision became the final order of the Board, ACI appealed the IAJ's decision to the superior court. Finding substantial evidence in the record to support the IAJ's findings, the superior court affirmed the decision and entered a $6,600 judgment against ACI. ACI appeals.

ANALYSIS

I. WISHA BURDEN OF PROOF AND STANDARD OF REVIEW

Our legislature enacted WISHA "to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of

Washington." RCW 49.17.010. We liberally construe WISHA to effectuate this purpose. *BD Roofing, Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 98, 106, 161 P.3d 387 (2007) (quoting *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 336, 24 P.3d 424 (2001)). RCW 49.17.050(2) requires L&I to adopt occupational health and safety standards that are at least as effective as those promulgated by the United States Secretary of Labor under the federal Occupational Safety and Health Act of 1970 (OSHA), Title 29 U.S.C. ch. 15. Ch. 49.17 RCW "authorizes [L&I] 'to issue citations and assess penalties against an employer for on site safety violations.'" *BD Roofing*, 139 Wn. App. at 106 (quoting *Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 517, 852 P.2d 288 (1993)).

L&I bears the initial burden of proving a WISHA violation. *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 201, 248 P.3d 1085, *review denied*, 171 Wn.2d 1033 (2011). To prove a serious violation of a WISHA safety regulation, L&I has the burden of proving that (1) the regulation in question applies; (2) the employer did not meet the standard's requirements; (3) the employees were either exposed to or had access to the violative condition; (4) "'the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition'"; and (5) the violative condition created a substantial probability of death or serious physical harm. *BD Roofing*, 139 Wn. App. at 106-07 (quoting *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012, *review denied*, 152 Wn.2d 1003 (2004)).

WISHA also governs judicial review of the Board's decisions. RCW 49.17.140; RCW 49.17.150(1). We review such decisions directly, based on the record before the agency. *J.E.*

*Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 42, 156 P.3d 250 (2007) (citing *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005), *review denied*, 156 Wn.2d 1028 (2006)). "We review findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law." *J.E. Dunn Nw., Inc.*, 139 Wn. App. at 42 (citing *Inland Foundry Co.*, 106 Wn. App. at 340). "Substantial evidence is evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *J.E. Dunn Nw., Inc.*, 139 Wn. App. at 43 (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).

We review the amount of a penalty for abuse of discretion. *Danzer v. Dep't of Labor & Indus.*, 104 Wn. App. 307, 326, 16 P.3d 35 (2000), *review denied*, 143 Wn.2d 1020 (2001). Abuse of discretion occurs when the decision is arbitrary or rests on untenable grounds or untenable reasons. *Danzer*, 104 Wn. App. at 326. A penalty determination based on relevant factors and supported by substantial evidence is not arbitrary or based on untenable grounds. *Danzer*, 104 Wn. App. at 327.

## II. SUFFICIENT EVIDENCE OF VIOLATION

ACI argues that L&I failed to meet its burden to establish exposure to a hazard because it did not prove that Torresin was working in an area of the trench that was at least four feet deep. We disagree.

Although ACI's evidence may have contradicted some of McMinimy's testimony, McMinimy's testimony and his photographs support the IAJ's finding that Torresin was working

in an unprotected trench that was over four feet in depth.[8] First, McMinimy measured the depth at the sidewalk end of the trench as five feet seven inches deep and he photographed this measurement. Second, Torresin also testified that that end of the trench was approximately five feet seven inches deep. Third, although the testimony and the photographs also showed that the ground level was slightly lower at the valve end of the trench,[9] if the valve end of the trench was less than four feet deep, it would be more than nineteen inches lower than the sidewalk end and the photographs do not show such a steep decline. Fourth, even if the valve end was not over four feet deep, McMinimy testified that he had seen Torresin "walking back and forth in the trench."[10] CP at 197. Thus, the finding that Torresin was in portions of the trench that were more than four feet deep is supported by substantial evidence and this argument fails.

ACI also appears to challenge McMinimy's classifying the soil as class C soil. Regardless of that classification, there is substantial evidence supporting a finding that ACI failed to properly protect its workers from a potential hazard. Even if the IAJ relied on ACI's evidence that the soil type was class B, rather than class C, there was no shoring in the trench, at least one wall was not benched, and the photographs clearly show that the trench walls were

---

[8] Much of ACI's argument hinges on whether Torresin's or McMinimy's testimony was more credible or should carry more weight. For instance, ACI states, without citation to any authority, "Weight of testimony to those who were present onsite and familiar with the trench's actual dimensions should be given deference." Br. of Appellant at 10. We do not review the fact finder's credibility or weigh determinations. *See Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994).

[9] There is no dispute that the bottom of the trench was level.

[10] ACI asserts that the evidence that Torresin was working only at the valve end of the trench was uncontroverted. ACI is mistaken; McMinimy testified that he had seen Torresin "walking back and forth" in the trench. CP at 197.

essentially straight and not sloped at a "[o]ne to one" ratio, which is what ACI's own witness testified was required for class B soils. CP at 268. Accordingly, this argument also fails.

### III. PENALTY

Finally, ACI argues that the probability score was incorrect because (1) there was no evidence that any employees entered the portion of the trench that was at least four feet deep; and (2) even if there was such evidence, the exposure was brief. ACI argues that the probability score should have been one rather than four. We disagree.

As discussed above, the record supports findings that (1) the valve end of the trench was at least four feet deep, and (2) McMinimy observed at least one employee walking back and forth in the trench. Accordingly, ACI's assertion that there was no evidence that employees were exposed to the risk of an unprotected trench has no merit.

Furthermore, although the record shows that McMinimy observed Torresin in the trench only for a short period of time, there is substantial evidence in the record that the exposure would have been more significant had McMinimy not intervened. First, there was evidence that Torresin had been in the trench before McMinimy arrived. Second, it was clear that the hydrant installation was not complete and completing the installation would have undoubtedly required more exposure. Additionally, the exposure to the risk is just one of several factors that contributed to the probability rating. Thus, ACI has not shown that the probability rating of four was improper.

No. 44918-8-II

We affirm the IAJ's decision and order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.
JOHANSON, C.J.

We concur:

Hunt, J.
HUNT, J.

Melnick, J.
MELNICK, J.