# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| OSTROM MUSHROOM FARM COMPANY, | No.  53180-1-II |
| Respondent, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Under the Washington Industrial Safety and Health Act (WISHA),[1] the Department of Labor and Industries (Department) issued a citation to Ostrom Mushroom Farm Company in 2016.  This citation included a failure to abate violation and an associated penalty. Ostrom appealed this decision, and an industrial appeals judge (IAJ) vacated the citation in a proposed decision.  The Department sought review of the Board of Industrial Insurance Appeals, which granted review, reversed the IAJ, and affirmed the citation.  Ostrom appealed the Board's decision to the Thurston County Superior Court, which reversed the Board.  The Department appeals the superior court's decision.

The parties dispute whether substantial evidence supports the Board's findings and whether the Department's penalty calculation was reasonable.  We hold that substantial evidence

---

Citations and pin cites are based on Westlaw online version of the cited material.

[1] Ch. 49.17 RCW.

supports the Board's findings and that the Department's penalty calculation was reasonable. Thus, we reverse the superior court and affirm the Board's decision.

FACTS

Ostrom produces mushrooms at a facility in Lacey. Ostrom was using the chemical Verticide to sanitize its facility at all times relevant to this appeal. The Material Safety Data Sheet (MSDS) for Verticide requires that an emergency eyewash station be present when there is potential for exposure to concentrated Verticide. Verticide can cause severe damage to the eyes, including blindness. Ostrom possessed concentrated Verticide in 55-gallon drums and 1-gallon containers.

Ostrom used Verticide in two ways at its facilities. First, Ostrom used Verticide for employee foot dips and foot mats. Employees poured a small amount of concentrated Verticide into a 5-gallon bucket, mixed it with water, and poured it into the foot mats. Second, Ostrom sprayed diluted Verticide on approximately 90 percent of the facility's floors every night. Employees would hand pump the concentrated Verticide from the 55-gallon drum into a 250-gallon container, mix it with water, and spray it throughout the facility.

In 2014, the Department issued a citation and notice ("2014 citation") to Ostrom. The 2014 citation included seven different violations. Violations 1-1 and 1-2 in this citation (violations 1-1 (2014) and 1-2 (2014)) specifically cited Ostrom's improper use of paraformaldehyde and failure to create an exposure control area for paraformaldehyde. Violation 1-3 (violation 1-3 (2014)), based on WAC 296-800-15030, stated:

> The employer did not provide an emergency eyewash station where employees are exposed to corrosives, strong irritants, or toxic chemicals as required by this standard.

2

> Employees use chemicals such as *Verticide Germicidal Detergent*, Liquichlor, Bleach, Pounce 25 WP Insecticide, which require an emergency eyewash station.
>
> Employees are exposed to eye burns and corneal damage without an accessible eyewash station.

Administrative Record (AR) at 410 (emphasis added). Violation 1-3 (2014) was classified as serious.

Ostrom informed the Department's inspector that it had purchased emergency eyewash stations and would install them to abate the violation. As a result, the inspector marked the hazard from violation 1-3 (2014) as abated. Ostrom did not appeal the 2014 citation and it became final.

In 2016, the Department again inspected Ostrom's facility. As a result of this inspection, the Department issued another citation and notice (2016 citation). Violation 1-1 in this citation and notice (violation 1-1 (2016)), based on WAC 296-307-03930,[2] stated:

> The employer did not provide an emergency eyewash where there is the potential for employees' eyes to be exposed to corrosives, strong irritants, or toxic chemicals as required by this standard. At the time of the inspection an employee was using Verticide, a severe eye irritant, without access to an emergency eyewash.
>
> Eye exposure to corrosive, severe irritant or toxic chemicals could result in severe irritation and/or serious eye damage. Lack of effective first-aid through the use of an emergency eyewash increases the likelihood of a debilitating eye injury.

AR at 392. Violation 1-1 (2016) was classified as a failure to abate violation 1-3 (2014). For violation 1-1 (2016), the Department imposed a $30,000 penalty.

---

[2] WAC 296-800-15030 and WAC 296-307-03930 are identical in their requirements for emergency eyewash stations regarding corrosive, irritant, or toxic chemicals. The former is in the safety and health core rules and the latter is in the safety standards for agriculture. WAC 296-800-15030; WAC 296-307-03930.

The Department issued a Corrective Notice of Redetermination (CNR), which affirmed violation 1-1 (2016) and the penalty. Ostrom appealed the CNR to the Board. A hearing was held before an industrial appeals judge. Multiple witnesses provided competing testimony.

Olson testified that in May 2016, he inspected Ostrom because the Department received a referral that an Ostrom employee suffered a chemical splash. On arrival, Olson met with Joe Cosare and Michael Lasseter, two managers at Ostrom. Olson testified that Cosare stated that there were no eyewash stations in the area that Ostrom mixed or used the chemicals, that there was no eyewash station in the tray line area where the 50-gallon drums were, and there was no eyewash station where the Verticide concentrate was mixed with water. Lasseter told Olson that no eyewash stations were ever installed after the 2014 inspection but that there were handheld eyewash bottles.

Olson completed a walk-around of the facility. Because the referral was based on a chemical splash, Olson examined areas where the chemical splash occurred, where the employee mixed chemicals, and where the employee used chemicals. Olson testified that he observed handheld eyewash bottles, but he noted that those bottles were not in compliance with the Department standards.

Olson also observed two portable eyewash stations in boxes. Specifically, he stated, "This was when I opened the inspection and was speaking with Joe Cosare and Mike Lasseter. I asked if they had any eyewash stations. They said they had some, but they hadn't installed yet. And they showed me these, there was [sic] two gravity fed wall mounted eyewash stations in boxes in Mike Lasseter's office." AR at 220.

Olson took multiple photographs during this May 2016 inspection. Olson photographed a storage area for Verticide drums. He testified that if Ostrom was using Verticide, Ostrom was required to have an eyewash station within 50 feet of the area. Olson did not observe an eyewash station in this area. He noted that there was a shower area, but it did not meet the standards for an eyewash station.

Olson also took pictures of the portable eyewash stations still in their boxes that Ostrom had purchased after the 2014 citation. Olson stated that the boxed eyewash stations had the same packing labels as those the previous inspector had marked as evidence of abatement in 2014. Specifically, Olson testified, "The hazards are the same. The lack of an eyewash, and the photograph used as the abatement photograph in the 2014 inspection . . . is a photograph of the same eyewash in a box that I observed when I did my inspection; meaning, that it was not installed." AR at 223. As a result, Olson checked the case file from the prior inspection which had photographs of the packing labels in 2014, "The packing label on this one matched the photo that I took during my inspection. . . . [E]verything on the job number, everything on the label matched up." AR at 227.

Olson conducted another inspection shortly thereafter and saw that one of the portable eyewash stations had been installed near a Verticide storage area. Olson closed the inspection in July 2016. Olson found violation 1-1 (2016) because Olson did not observe eyewash stations during his walk-around. Olson marked this violation as a failure to abate because no eyewash stations met the safety standards for Verticide use.

Olson also testified about the $30,000 penalty calculation. For the calculation, Olson used the WISHA penalty guidelines set forth in WAC 296-900-14010 and WAC 296-900-14020.

On a scale of 1 to 3, he determined that the severity factor number was 3 based on Verticide's MSDS sheet and the potential for severe eye damage. Again, on a scale of 1 to 3, Olson determined that the probability factor number was 1 based on the short duration of chemical concentrate used. Based on these factor numbers, the base penalty was $3,000. Because violation 1-1(2016) was a failure to abate, a multiplier was added to the base penalty. Had the multiplier been based on the amount of days that the violation had not been abated, the multiplier would have been approximately 900. Because Olson believed 900 would have been excessive, he used a multiplier of 10.

Cosare testified that Verticide was mixed approximately 5 feet away from an eyewash station. He testified that the eyewash station was functional before the 2016 citation and that this eyewash station was accompanied by a shower. Cosare testified that there were 4 eyewash stations in total in May 2016. Cosare testified that he did not remember being present or answering questions for Olson's inspection. He also testified that he was familiar with safety equipment and procedures.

Ostrom's Human Resources Manager, Jacqueline Copeland-Gordon also testified. Copeland Gordon's duties included worker safety. She testified that there were 3 eyewash stations in May 2016. She testified that there were 3 Verticide mixing stations in the facility. She estimated that one of the Verticide mixing stations appeared more than 50 feet away from the nearest eyewash station.

Following the hearing, the IAJ issued a Proposed Decision and Order vacating the CNR. The Department petitioned for review to the Board, which the Board granted.

No. 53180-1-II

The Board determined that Ostrom failed to abate violation 1-3(2014). The Board found in relevant part:

2. On February 28, 2014, the Department issued [the 2014] Citation and Notice . . . to Ostrom Mushroom Farm Co., which was unappealed and became final. Item 1-3 in that citation was a serious violation of WAC 296-800-15030, which requires employers provide an emergency eyewash station where employees are exposed to corrosives, strong irritants, or toxic chemicals, such as Verticide. Between February 28, 2014, and May 6, 2016, Ostrom failed to provide emergency eyewash stations as required by the rule.

3. During the May 6, 2016 inspection in Lacey, Washington, Ostrom Mushroom Farm's employees were potentially exposed to corrosives, strong irritants, or toxic chemicals, such as Verticide, without the required emergency eye wash [sic] stations within 50 feet of where Verticide was stored, mixed, or used as required by WAC 296-307-03930.

AR at 7. In finding of fact 8, the Board also found that the Department's penalty for violation 1-1 (2016) was appropriate. Thus, the Board concluded that Ostrom committed violation 1-1(2016) and was appropriately penalized.

Ostrom appealed the Board's decision to Thurston County Superior Court. The superior court ruled that the Board incorrectly determined that Ostrom committed violation 1-1 (2016) and reversed the associated penalty.

The Department appeals the superior court's order and judgment.

ANALYSIS

I. SUBSTANTIAL EVIDENCE

The Department argues that the superior court erred in reversing the Board because substantial evidence supports the Board's Decision and Order. Ostrom counters that substantial evidence does not support that it failed to abate violation 1-3 (2014) because Ostrom was not in

7

violation of WISHA on reinspection in 2016 and because the conditions of the 2016 citation were not identical to the conditions of the 2014 citation. We agree with the Department.

We review a decision based on the record before the Board. *Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014). In a WISHA appeal, the Board's findings of fact are conclusive if supported by substantial evidence. *Frank Coluccio Constr.*, 181 Wn. App. at 35. Evidence is substantial if it is sufficient in quantity to persuade a fair-minded person of its truth. *Frank Coluccio Constr.*, 181 Wn. App. at 35. We view the evidence and all reasonable inferences that can be drawn from that evidence in favor of the party that prevailed in front of the Board, here, the Department. *Frank Coluccio Constr.*, 181 Wn. App. at 35. If there is substantial evidence to support the findings of fact, we then determine whether those findings support the Board's conclusions of law. *Frank Coluccio Constr.*, 181 Wn. App. at 35; RCW 49.17.150(1).

We do not reweigh the evidence on appeal. *Potelco, Inc. v. Dep't of Labor & Indus.*, 7 Wn. App. 2d 236, 243, 433 P.3d 513 (2018). The possibility of drawing inconsistent conclusions from the evidence does not prevent an administrative agency's findings of fact from being supported by substantial evidence. *Aviation W. Corp. v. Dep't of Labor & Indus.*, 138 Wn.2d 413, 429, 980 P.2d 701 (1999). We do not substitute our own judgment for that of the agency in factual issues unless authorized by the Administrative Procedure Act.[3] *Aviation W.*, 138 Wn.2d at 429.

We construe WISHA liberally to reflect the purpose of providing safe working environments to workers in Washington. *Frank Coluccio Constr.*, 181 Wn. App. at 36. We give

---

[3] Ch. 34.05 RCW.

substantial weight to the Department's interpretation of statutes and regulations within its area of expertise and will uphold that interpretation if doing so does not contradict the legislative intent. *Frank Coluccio Constr.*, 181 Wn. App. at 36. We review conclusions of law de novo. *Inland Foundry Co., Inc. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001).

The Department bears the initial burden of proving a WISHA violation. WAC 263-12-115(2)(b); *Bayley Constr. v. Dep't of Labor & Indus.*, 10 Wn. App. 2d 768, 782, 450 P.3d 647 (2019), *review denied*, 195 Wn.2d 1004 (2020). To establish a serious violation of a WISHA safety regulation, the Department must prove (1) the cited standard applies, (2) the requirements of the standard were not met, (3) employees were exposed to or had access to the violative condition, (4) the employer knew or through the exercise of reasonable diligence could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition. *Frank Coluccio Constr. Co.*, 181 Wn. App. at 36-37.

The Department may issue a violation for failure to abate, meaning that a previously cited violation has not been remedied. WAC 296-900-099. To establish a failure to abate a violation when the underlying citation was not appealed, the Department must prove (1) the underlying citation was a final order, (2) the condition on reinspection is identical, and (3) the condition on reinspection is in violation of WISHA. *In re Richard A. Castle, dba Olympia Glass Co.*, No. 95 W445 (Wash. Board of Indus. Ins. Appeals Nov. 15, 1996). We adopt this failure to abate standard.

WAC 296-307-03930 requires functional and readily accessible emergency eye washing stations where there is the potential for an employee to come in contact with corrosives, strong irritants, or toxic chemicals.

A.    *Substantial Evidence Supports that Ostrom Violated WAC 296-307-03930 (Finding of Fact 3)*

The Department argues that substantial evidence supports that Ostrom violated WAC 296-307-03930 as set forth in violation 1-1 (2016). The Department points primarily to Olson's testimony from his investigation. Ostrom counters that it was not in violation of WAC 296-307-03930 in 2016. We agree with the Department.

Taken in the light most favorable to the Department, the evidence showed that Ostrom used Verticide, a chemical its employees knew required an emergency eyewash station. In May 2016, Olson met with Joe Cosare and Michael Lasseter, two managers at Ostrom. Olson testified that Cosare stated that there were no eyewash stations in the area where Ostrom mixed or used the chemicals, that there was no eyewash station in the tray line area where the 50-gallon drums were, and there was no eyewash station where the Verticide concentrate was mixed with water. Lasseter told Olson that no eyewash stations were ever installed after the 2014 inspection, but that there were handheld eyewash bottles.

Olson completed a walk-around of the facility. Olson testified that he observed handheld eyewash bottles, but he noted that those bottles were not in compliance with the Department standards. Olson also observed 2 eyewash stations in boxes. Specifically, he stated, "This was when I opened the inspection and was speaking with Joe Cosare and Mike Lasseter. I asked if they had any eyewash stations. They said they had some, but they hadn't installed yet. And they showed me these, there was [sic] two gravity fed wall mounted eyewash stations in boxes in

10

Mike Lasseter's office." AR at 220. Photographs of these unused eyewash stations were entered as exhibits. Copeland-Gordon estimated that Ostrom mixed Verticide at a location that was more than 50 feet away from an emergency eyewash station.

Viewing the evidence and all reasonable inferences in favor of the Department, *Frank Coluccio Constr.*, 181 Wn. App. at 35, we hold that the evidence is sufficient to persuade a fair-minded person of its truth. Accordingly, we hold that substantial evidence supports the Board's finding that Ostrom violated WAC 296-307-03930.

We decline Ostrom's invitation to reweigh the evidence. We do not reweigh the evidence on appeal or substitute our own judgment for that of the agency regarding factual issues. *Potelco*, 7 Wn. App. 2d at 243; *Aviation W.*, 138 Wn.2d at 429. Taking the evidence in the light most favorable to the Department, we hold that substantial evidence supports that Ostrom violated WAC 296-307-03930 when it failed to provide emergency eyewash stations where employees are exposed to chemicals like Verticide as set forth in violation 1-1 (2016).

B.      *Substantial Evidence Supports that the Conditions Were Identical on Reinspection (Finding of Fact 2)*

The Department argues that substantial evidence supports that conditions were identical on reinspection because Ostrom failed to abate violation 1-3 (2014). The Department points to the language of violation 1-3 (2014) and Violation 1-1 (2016). We agree.

In 2014, the Department found that violation 1-3 (2014) was for Ostrom's failure to provide emergency eyewash stations and specifically referenced Verticide. In this case, the Board found that this hazard still existed on reinspection in 2016.

Violation 1-3 (2014) stated, "Employees use chemicals such as *Verticide Germicidal Detergent*, Liquichlor, Bleach, Pounce 25 WP Insecticide, which require an emergency eyewash

station."  AR at 410 (emphasis added).  Ostrom did not appeal the 2014 citation and it became final.  Violation 1-1 (2016) stated that Ostrom did not provide an emergency eyewash station where employees were exposed to chemicals, including Verticide.  These violations state the same violation—failure to provide an emergency eyewash station.  The violations explicitly reference the same chemical requiring the emergency eyewash station—Verticide.  Viewing the evidence in a light most favorable to the Department, we hold that substantial evidence supports that the conditions described in violation 1-3 (2014) and violation 1-1 (2016)—failure to provide an emergency eyewash station—were identical on reinspection.

Ostrom argues that substantial evidence does not support that conditions on reinspection in 2016 were identical to the conditions present for the 2014 citation.  It argues that "the failure to abate and install the portable eyewash units was based on Ostroms' prior use of paraformaldehyde, and the portable eyewashes that were purchased for paraformaldehyde use." Br. of Resp't at 12.  Ostrom argues that because it stopped using paraformaldehyde, the portable eyewash stations were unnecessary.  But this argument misconstrues the record.  Violation 1-3 (2014) does not mention paraformaldehyde.  Paraformaldehyde was mentioned only in violations 1-1 (2014) and 1-2 (2014) relating to Ostrom's failure to create an exposure control area.  We hold that substantial evidence supports that the conditions were identical on reinspection.

## II.  PENALTY DETERMINATION (FINDING OF FACT 8)

Ostrom argues that in the event we reverse the superior court's decision, we should hold that the Department abused its discretion when it imposed the $30,000 penalty.  Ostrom argues that the facts of this case do not support a multiplier of 10.  We disagree.

WAC 296-900-14010 provides a process and guidelines for WISHA violation penalties. First, the Department determines the base penalty amount. Second, the Department determines a severity factor number and a probability factor number, both on a scale of 1 through 3. WAC 296-900-14010. Next, the Department multiplies the severity number by the probability number to get a gravity number. WAC 296-900-14010.

For a failure to abate violation, the Department uses table 14 in WAC 296-900-14020 to determine multipliers for the base penalty. The base penalty may be multiplied by the number of calendar days past the correction date, with a minimum of five days. WAC 296-900-14020. The penalty may not be more than $7,000 per day. WAC 296-900-14020.

The Department has discretion in determining final penalties and must give "due consideration to the appropriateness of the penalty with respect to the number of affected employees . . . the gravity of the violation, the size of the employer's business, the good faith of the employer, and the history of previous violations." RCW 49.17.180(7). We review the Department's penalty determination for an abuse of discretion. *Potelco*, 7 Wn. App. 2d at 253. An abuse of discretion occurs where the decision is arbitrary or rests on untenable grounds or reasons. *Danzer v. Dep't of Labor & Indus.*, 104 Wn. App. 307, 326, 16 P.3d 35 (2000).

Here, the severity factor number was 3, based on Verticide's MSDS sheet and the potential for severe eye damage. The probability factor number was 1, based on the short duration of chemical concentrate used. Based on these factor numbers, the base penalty was $3,000. Because violation 1-1 (2016) was a failure to abate, a multiplier was added to the base penalty. Had the multiplier been based on the amount of days that the violation had not been abated, the multiplier would have been approximately 900. However, the Department reasoned

13

that 900 would have been excessive and instead set the multiplier at 10. Given the large amount of time, hundreds of days, between the 2014 citation and the 2016 citation, the Department did not abuse its discretion when applying a much lower a multiplier in Ostrom's favor. We hold that the Department did not abuse its discretion when imposing the $30,000 penalty.

We hold that substantial evidence supports that Ostrom violated WAC 296-307-03930 as set forth in violation 1-1 (2016) and that Ostrom failed to abate violation 1-3 (2014). We also hold that the Department did not abuse its discretion when imposing the $30,000 penalty. Thus, we reverse the superior court and affirm the decision of the Board.

_____
Worswick, J.

_____
Lee, C.J.

_____
Sutton, J.