[No. 6197–3–III.   Division Three.   April 2, 1985.]

ROBERT HARRISON, ET AL, *Respondents,* v. PEYTON
WHITT, ET AL, *Defendants,* DENNIS BUDDRIUS,
ET AL, *Appellants.*

*Robert T. Carter* and *Randall & Danskin,* for appellants.

*Robert J. Crotty, Kevin J. McCullough,* and *Lukins & Annis, P.S.,* for respondents.

GREEN, C.J.—Two independent aerial applicators sprayed herbicides to kill the weeds in wheat fields that adjoined the Harrisons' alfalfa field. The alfalfa crop was severely damaged by 2,4–D. A jury found that Dennis Buddrius, d/b/a Red Baron Aviation, caused the damage and absolved Peyton Whitt, d/b/a Whitt Aviation.

Buddrius appeals contending there was insufficient evidence to support the verdict and the court erred in awarding attorney fees to the Harrisons under the Consumer Protection Act (CPA).

Robert and Lillian Harrison farm in Stevens County growing wheat and alfalfa. Mr. Harrison hired Mr. Buddrius, who is in the business of aerial application of agricultural herbicides and fertilizers, to spray his wheat fields. On April 20, 1982, Herm Gallaher, Mr. Buddrius' pilot, met with Mr. Harrison to discuss which fields he wanted sprayed. Mr. Harrison instructed Mr. Gallaher to spray a mixture of 2,4–D/Banvel on the wheat field adjacent to the 35–acre alfalfa field which is the subject of this lawsuit; and straight 2,4–D on another wheat field located several miles away. On April 21, Mr. Gallaher sprayed Mr. Harrison's crops. On May 10, 1982, Dale Richmond hired Peyton Whitt, another aerial applicator, to spray a field of wheat, adjoining the Harrisons' 35–acre alfalfa field on the west, with a mixture of 2,4–D/Banvel. On May 14 Mr. Harrison observed that his 35–acre alfalfa field had suffered substantial damage. It was determined the damage resulted from a direct application of 2,4–D.

On July 20 the Harrisons filed a complaint alleging negligence against Peyton Whitt d/b/a Whitt Aviation. Later the complaint was amended to add Dennis Buddrius d/b/a

Red Baron Aviation as defendant and a second cause of action for violation of the CPA. The jury had to decide which of these two aerial applicators negligently sprayed the Harrisons' alfalfa field. A verdict was returned against Mr. Buddrius d/b/a Red Baron Aviation. The court then held the CPA applied and awarded attorney fees to the Harrisons.

First, Mr. Buddrius contends there was insufficient evidence to support the verdict against him. He argues that while circumstantial evidence may be aided by expert opinion testimony, the expert's opinion must be based on the facts in order to be accorded probative value.

■■ A verdict cannot be based on mere theory or speculation, *Brashear v. Puget Sound Power & Light Co.,* 100 Wn.2d 204, 209, 667 P.2d 78 (1983) (quoting *Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980)), but it does not rest on speculation or conjecture when the verdict is based upon reasonable inferences drawn from circumstantial facts. *Thompson v. Grays Harbor Comm'ty Hosp.,* 36 Wn. App. 300, 304, 675 P.2d 239 (1983); *State Farm Mut. Ins. Co. v. Padilla,* 14 Wn. App. 337, 540 P.2d 1395 (1975). Furthermore, admission of expert testimony is discretionary with the trial court, *Department of Fisheries v. Gillette,* 27 Wn. App. 815, 825, 621 P.2d 764 (1980), and the court's decision is given particular deference when there are fair arguments to be made both for and against its admission. *Weber v. Biddle,* 72 Wn.2d 22, 24, 431 P.2d 705 (1967); *In re Bennett,* 24 Wn. App. 398, 404, 600 P.2d 1308 (1979).

Mr. Buddrius contends the opinion of the Harrisons' expert, Calvin Briggs, was based on three false assumptions and therefore has no probative value. He argues that absent Mr. Briggs' testimony, there is no evidence to support the verdict.

The first false assumption claimed to be made by Mr. Briggs, an experienced investigator for the Washington State Department of Agriculture, was "that Gallaher had sprayed straight 2,4–D on the adjoining L–shaped field."

We disagree. The record shows: (a) The Department of Agriculture analyzed the damaged alfalfa plants and determined the damage was due to a direct application of the herbicide 2,4–D. (b) Mr. Whitt stated he sprayed the adjoining Richmond wheat field with a 2,4–D/Banvel mixture and not just 2,4–D on May 10. However, Mr. Gallaher, Mr. Buddrius' pilot, was uncertain in his conversation with Mr. Briggs whether he had sprayed straight 2,4–D or a mixture of 2,4–D/Banvel on the wheat crop adjacent to the alfalfa field. Only Mr. Gallaher admittedly sprayed 2,4–D during the relevant period of time. The only uncertainty was whether it was sprayed on the alfalfa field, the adjoining wheat field or on another field located some distance away. (c) Mr. Whitt's method of flying was not conducive to the type of drift necessary to damage the Harrisons' alfalfa crop. (d) Mr. Briggs examined the alfalfa crop on May 25 and personally observed the degree of death of the plants and believed the degree was beyond that which would occur 15 days from the date of the application. Also, the testimony of another expert, Mr. Grimes, supports Mr. Briggs' conclusion when he stated: "To be this far [degraded], I just could not see how this could take place in a span of twelve, ten to twelve days. . . . Judging by the degradation of these alfalfa plants . . . it's got to be at least two to three weeks." The inference to be drawn is the application by Buddrius on April 21 caused the damage.

The second alleged false assumption claimed to be made by Mr. Briggs was that "one could have sprayed alfalfa on April 21, with a dosage sufficient to damage it severely, but that the damage could go undetected for a full 23 days until May 14." This is not a factual assumption; it is an expression of opinion by Mr. Briggs and was concurred in by Mr. Grimes. Here there is a conflict of opinion or interpretation of the facts between Messrs. Briggs and Grimes and the other experts. Where evidence is conflicting, the trier of fact may believe the testimony of some witnesses and disbelieve the testimony of others, as well as draw from the evidence any reasonable inferences fairly

deducible therefrom. *Beckendorf v. Beckendorf,* 76 Wn.2d 457, 457 P.2d 603 (1969); *Harding v. Warren,* 30 Wn. App. 848, 639 P.2d 750 (1982). Questions of credibility are for the trier of fact. *Powers v. Hastings,* 93 Wn.2d 709, 715, 612 P.2d 371 (1980). Here the jury chose to believe Messrs. Grimes and Briggs.

The third false assumption claimed by Buddrius was an alleged statement by Mr. Briggs "that the spray damage to the 35 acre alfalfa field and the modest amount of over-spray damage to the 14 acre alfalfa field directly north from the L–shaped adjoining wheat field on May 25 showed the same symptoms." Mr. Buddrius argues from this that Mr. Briggs reasoned these two items of damage must have been done *at the same time* by Gallaher. Mr. Buddrius makes this statement in his brief and cites to the report of proceedings at pages 169–70 as the place where Mr. Briggs made this factual assumption. All that is found there is that the two alfalfa fields had the same symptoms. This was his opinion. He uses this opinion along with his observation of the pattern of damage in concluding there was a direct application of 2,4–D to the alfalfa by the Buddrius aircraft. It was the only aircraft admittedly applying 2,4–D on any field. There was nothing false in this testimony, although experts could disagree.

Thus, we find sufficient evidence construed in a light most favorable to the prevailing party to support the jury verdict against Mr. Buddrius.

Second, Mr. Buddrius contends the court erred in concluding the verdict finding him to be negligent constituted a per se violation of the Consumer Protection Act. We agree. It is clear that the liability of Mr. Buddrius is based solely on negligence. In *Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984), a decision involving application of the CPA to the practice of law, the court stated the CPA was not applicable to acts of negligence or malpractice.

██ While it may be true, as the Harrisons contend, that an aircraft "[o]perated in a faulty, careless, or negligent manner" violates RCW 17.21.150 and may be grounds

for the director of licenses to deny, suspend or revoke Buddrius' license, that statutory violation is not ipso facto a per se violation of the CPA. *See State v. Schwab,* 103 Wn.2d 542, 548–49, 693 P.2d 108 (1985). For a private individual to initiate an action under the CPA, the conduct complained of must: "(1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest." *Perry v. Island Sav. & Loan Ass'n,* 101 Wn.2d 795, 810, 684 P.2d 1281 (1984) (quoting *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980)); *Rouse v. Glascam Builders, Inc.,* 101 Wn.2d 127, 134, 677 P.2d 125 (1984). Here the first element has not been satisfied. There was no showing Mr. Buddrius did anything unfair or deceptive. He was simply negligent. To hold otherwise would be contrary to the purpose of the CPA as expressed in RCW 19.86.920:

> [T]he purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition.

*See Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 643, 538 P.2d 510 (1975); Erxleben, *The FTC's Kaleidoscopic Unfairness Statute: Section 5,* 10 Gonz. L. Rev. 333 (1975).

Thus, it was error to award attorney fees to the Harrisons and that portion of the judgment is reversed.

Affirmed in part; reversed in part.

McINTURFF and THOMPSON JJ., concur.

Reconsideration denied May 3, 1985.

Review denied by Supreme Court August 23, 1985.