# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHEHALIS SHEET METAL & ROOFING,<br><br>　　　　　　Appellant/<br>　　　　Cross-Respondent,<br>　v.<br><br>STATE OF WASHINGTON, DEPARTMENT<br>OF LABOR AND INDUSTRIES,<br><br>　　　　　　Respondent/<br>　　　　Cross-Appellant. | No.  46419-5-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — The Department of Labor and Industries (Department) cited Chehalis Sheet Metal & Roofing (Chehalis) for violating two Washington Industrial Safety and Health Act of 1973 (WISHA)[1] regulations following the injury of Ruston Gilbert, an employee of Chehalis.  The Board of Industrial Insurance Appeals (Board) adopted the findings and conclusions of the Industrial Appeals Judge (IAJ) affirming the citations and corresponding penalties.  Chehalis appealed to the superior court, which affirmed the citation and penalty for violating former WAC 296-155-505(6)(a) (2000) (the railing violation) and reversed the citation for violating WAC 296-876-40025 (the ladder violation).

On appeal, Chehalis argues that substantial evidence does not support the Board's finding that Chehalis violated the railing regulation; and, if substantial evidence does support such a

_____

[1] Ch. RCW 49.17.

finding, then the penalty amount was improper. The Department cross-appeals, arguing that substantial evidence supports the Board's finding that Chehalis violated the ladder regulation. We hold that substantial evidence supports the Board's findings and affirm the Board's findings that (1) Chehalis violated the railing regulation (former WAC 296-155-505(6)(a)), (2) the penalty amount arising from the railing violation was proper, and (3) Chehalis violated the ladder regulation (WAC 296-876-40025).

## FACTS

### A.    EVENTS LEADING UP TO THE INJURY

On December 16, 2010, Ruston Gilbert, an employee of Chehalis Sheet Metal & Roofing, fell off the roof of a building at a high school and was injured. Before he was hired by Chehalis in July 2010, Gilbert had completed a two-year degree and had about ten years of experience working as a repair man in the heating, ventilation, and air conditioning (HVAC) field.

In the month prior to Gilbert's injury, Gilbert visited the high school to diagnose what was wrong with the school's current HVAC unit. Gilbert thought he remembered noting on the back of the job invoice that the installation of a new compressor would require "two techs or a crane," but upon review of the invoice, nothing was written on the back. Certified Appeal Board Record-Transcript (CABR-TR) at 26. Gilbert also remembered telling a manager at Chehalis, David Mills, that the project needed two techs or a crane. But, Mills did not recall Gilbert ever mentioning the need for assistance at this job prior to the day of the injury. Two men loaded the compressor into Gilbert's van to be installed at the high school.

When Gilbert arrived at the high school on December 16, he radioed Mills and asked if there was anyone available to help with the compressor installation. Mills responded that there

2

was not. Mills was under the impression that Gilbert would try and find a maintenance man at the school to help him get the compressor on the roof. Mills did not hear anything further from Gilbert.

Gilbert initially waited for the maintenance man to help take the compressor up to the roof, but then decided to complete the job without help. Gilbert propped an extension ladder against the edge of the roof and carried the new compressor from his van to the base of the ladder. When asked how he got the compressor onto the roof, Gilbert responded, "I took it one step at a time up the extension ladder." CABR-TR at 15. Gilbert continued, "And then I had to go across the front of the unit where the panels are facing me, all the way to the right. As I was setting the compressor into the unit, my knee slipped out from under me and I slid down the roof." CABR-TR at 15. As Gilbert slid off the sloped roof, the compressor followed, striking him on the back of the head and shoulder, and lacerating his head. At that point, Gilbert gathered his tools and drove to a nearby fire department for help.

B.    POST-INJURY INVESTIGATION

The Department sent an inspector to conduct an investigation of the workplace injury. The inspector met separately with Mills, another Chehalis manager, and Gilbert. Regarding his interactions with Chehalis, the inspector noted that there was "a little animosity at the beginning and that's kind of normal." CABR-TR at 69. The inspector also obtained Chehalis' safety materials and visited the high school where Gilbert fell. When the inspector visited the site where Gilbert fell, there was no railing in place. Gilbert later identified the pictures the inspector took as the place where he was injured, and he marked with an "X" where he had positioned the ladder. Gilbert did not note that a railing had been in place at the time.

3

The inspector found that while Chehalis did have a written safety program, there was no disciplinary program that was "effective in practice." CABR-TR at 53. The inspector also found no evidence to suggest Chehalis was "ensuring that the proper equipment was available and ready to be used for the job." CABR-TR at 53. Safety meetings at Chehalis were held weekly, but were not mandatory and often did not cover the kinds of work in which Chehalis was engaged. Gilbert only attended one documented safety meeting during his employment with Chehalis.

C. CITATIONS

Based on the investigation, the Department issued two citations to Chehalis. The first citation was for a violation of former WAC 296-155-505(6)(a)[2] for Gilbert's work on a surface with a height of four feet or more without the protection of a standard railing or equivalent fall protection. The second citation was for a violation of WAC 296-876-40025 for Gilbert's failure, as a Chehalis employee, to keep both hands free while climbing a ladder.

Both violations were classified as "serious" violations because serious injury could result from both violations. Certified Appeal Board Record (CABR) at Ex 2. To determine the penalty, the Department considered the gravity of the violation, which is the product of the probability and the severity of the violation, along with Chehalis' size, Chehalis' history of previous violations, and Chehalis' good faith during the investigation. The Department determined Chehalis' good faith was "average" for both violations. CABR-TR at 60. The Department calculated the penalty for each violation and determined that the penalty amount for each would be $1,800.

---

[2] After the Department's inspection, the language of WAC 296-155-505 was changed and moved to WAC 296-155-24609.

D.    PROCEDURAL HISTORY

After the citations were issued, Chehalis protested and a corrective notice of redetermination was issued. The notice of redetermination affirmed the violations, their classification as "serious," and the penalty amounts. CABR-TR at 3. Chehalis appealed, and an IAJ heard the appeal.

The IAJ heard testimony from Gilbert, the Department's inspector, the high school's maintenance man, and Mills. The IAJ also received as exhibits photographs of the jobsite, the WISHA citation, and the final notice of redetermination. The IAJ issued findings of fact and conclusions of law on May 17, 2012, and found that Chehalis committed serious violations of former WAC 296-155-505(6)(a) and WAC 296-876-40025 based on Gilbert's actions as a Chehalis employee, and found the penalty amounts for the violations were proper.

Chehalis appealed the IAJ's proposed decision and order to the Board. Chehalis argued (1) that the Department did not meet its burden of proof to show Chehalis had violated the two WAC requirements, (2) that substantial evidence failed to support the determination that the violations were "not unpreventable employee misconduct," and (3) that the penalty amount should be adjusted because Chehalis' good faith was better than "average." CABR at 3, 8. The Board considered Chehalis' petition for review and the IAJ's proposed decision and order, denied Chehalis' petition for review, and adopted the proposed decision and order as the decision and order of the Board.

Chehalis appealed the Board's decision to the superior court. The superior court found that substantial evidence supported the Board's finding of a violation of former WAC 296-155-505(6)(a), but did not support the Board's finding of a violation of WAC 296-876-40025. The

superior court also found that substantial evidence supported the Board's finding that the penalty for the violation of former WAC 296-155-505(6)(a) was proper. Chehalis filed a motion for reconsideration regarding the penalty amount, and the motion was denied. Chehalis appeals, and the Department cross-appeals.

## ANALYSIS

Chehalis argues that the Board's finding that a violation of former WAC 296-155-505(6)(a) occurred was improper, but if the finding of the violation was proper, the amount of the penalty for the serious violation of former WAC 296-155-505(6)(a) is improper. The Department cross-appeals, arguing that the superior court's finding that there was no violation of WAC 296-876-40025 was not supported by substantial evidence. We hold substantial evidence supports the Board's findings that (1) Chehalis violated former WAC 296-155-505(6)(a), (2) the penalty amount resulting from the violation of former WAC 296-155-505(6)(a) was proper and (3) Chehalis violated WAC 296-876-40025.

A. STANDARD OF REVIEW

WISHA governs the judicial review of decisions made by the Board of Industrial Insurance Appeals. RCW 49.17.140, .150(1)[3]; *Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 201, 248 P.3d 1085, *review denied* 171 Wn.2d 1033 (2011).

---

[3] Division One of this court has addressed the potential jurisdictional issue the Court of Appeals might have with the language of RCW 49.17.150(1) in *B&J Roofing, Inc. v. Bd. of Indus. Ins. Appeals*. There, the court said:

> We initially consider whether the Court of Appeals has jurisdiction to hear this appeal. RCW 49.17.150 governs superior court review of decisions by the Board regarding Washington Industrial Safety and Health Act of 1973 violations. RCW 49.17.150(1) provides in relevant part: "Upon the filing of the record with it,

6

This court reviews decisions made by the Board directly, based on the record before the agency. *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 42, 156 P.3d 250 (2007); *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005), *review denied*, 156 Wn.2d 1028 (2006); *Erection Co.*, 160 Wn. App. at 201. The reviewing court determines whether the findings of fact made by the Board are supported by substantial evidence in the record as a whole; and, if the findings are supported, whether those findings support the conclusions of law. RCW 49.17.150(1) ("findings of the board or hearing examiner where the board has denied a petition or petitions for review with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive"); *J.E. Dunn Nw.*, 139 Wn. App. at 42; *Erection Co.*, 160 Wn. App. at 202. "Substantial evidence is evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *J.E. Dunn Nw*, 139 Wn. App. at 43 (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)). The evidence and reasonable inferences therefrom are viewed in the light most

_____

the jurisdiction of the court shall be exclusive and the judgment and decree shall be final, except as the same shall be subject to review by the supreme court." The Board and the Department contend that this statute requires B&J to take its appeal directly to the Supreme Court.

However, RCW 49.17.150 provides permissive, not mandatory, Supreme Court review. The Rules of Appellate Procedure mandate review by the Court of Appeals of "any trial court decision which is subject to review as provided in Title 2." RAP 4.1(a). However, a party *may* seek review of a trial court decision in the Supreme Court where a statute authorizes direct review. RAP 4.2(a)(1). Thus, although RCW 49.17.150 authorizes direct review, such review is not mandatory. Because B&J properly brought its claim to the Court of Appeals as provided by RAP 4.1, this court has jurisdiction to hear the appeal.

66 Wn. App. 871, 874, 832 P.2d 1386 (1992).

favorable to the party that prevailed "in the highest forum that exercised fact-finding authority." *Erection Co.*, 160 Wn. App. at 202; *Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014). Thus, here, we view the evidence and reasonable inferences therefrom in the light most favorable to the Department, which prevailed before the Board. *Erection Co.*, 160 Wn. App. at 199, 202; *Frank Coluccio Constr. Co.*, 181 Wn. App. at 35.

Chehalis was cited by the Department for violating two provisions of the Washington Administrative Code: former WAC 296-155-505(6)(a) and WAC 296-876-40025. The legislature granted WISHA the authority to promulgate and enforce these WAC provisions. RCW 49.17.050, .120, and .180; *J.E. Dunn Nw*, 139 Wn. App. at 44.

"When alleging a violation of WISHA regulations against an employer, the Department bears the initial burden of proving the existence of that violation." *J.E. Dunn Nw*, 139 Wn. App. at 44; WAC 263-12-115(2)(b). Where the Department proves that an employer's violation is "serious," WISHA requires a penalty be assessed against the employer. RCW 49.17.180(2); *J.E. Dunn Nw*, 139 Wn. App. at 44. "Serious" violations are defined:

> [A] serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

The Department has the burden to prove the violation is "serious." *J.E. Dunn Nw*, 139 Wn. App. at 44. Thus, to establish the existence of a "serious" violation, the Department's burden is twofold: first, it must establish the elements of a violation itself; then, it must further establish the

8

elements that make a violation "serious." *Id.* Said differently, to establish its prima facie case that

a violation is "serious," the Department has the burden to prove each of the following elements:

> (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Id.* at 44-45 (internal quotations omitted) (quoting *Wash. Cedar & Supply Co. v. Dep't of Labor &*

*Indus.*, 119 Wn. App. 906, 91, 83 P.3d 1012, *review denied*, 152 Wn.2d 1003 (2004)).

B.      FORMER WAC 296-155-505(6)(A)—"RAILING REGULATION"

Chehalis argues the superior court erred because the Department did not establish a prima

facie case showing a violation of former WAC 296-155-505(6)(a). In support, Chehalis argues

that although the Department offered photographs of the jobsite without a railing, no testimony

established that the photographs accurately portrayed the jobsite as it looked on the day of the

injury. Chehalis also argues that the Department presented no evidence to show that Gilbert failed

to use fall protection or that there was an absence of guardrails on the roof. We disagree and hold

that substantial evidence supports the Board's finding that Chehalis violated the railing regulation.

Former WAC 296-155-505(6)(a) stated:

(6) Guarding of open sided surfaces.
(a) Every open sided floor, platform or surface four feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in subsection (7)(a) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toe board, wherever, beneath the open sides, persons can pass, or there is moving machinery, or there is equipment with which falling materials could create a hazard.

The only issue on appeal is whether substantial evidence supports the Board's finding that a railing or equivalent form of protection was not present at the time of Gilbert's fall.[4]

Viewing the evidence in the light most favorable to the Department, a fair-minded person could reasonably infer that there was no standard railing present at the time Gilbert fell. Exhibit 1 is a photograph of the roof Gilbert fell from, taken shortly after the fall, and does not show a railing is in place. Gilbert did not testify that the photographs inaccurately reflected the condition of the roof, and he did not testify that he set up a railing. But Gilbert did testify that Chehalis did not provide him with any safety equipment or safety tools. Further, Gilbert and the compressor actually slid off the roof and nothing stopped either from falling. Therefore, we hold that substantial evidence supports the Board's finding that Chehalis permitted an employee to work on a surface more than four feet high without the protection of a standard railing in violation of former WAC 296-155-505(6)(a).[5]

C.     PENALTY AMOUNT FOR SERIOUS VIOLATION OF FORMER WAC 296-155-505(6)(a).

Chehalis argues the trial court erred in upholding the fine of $1,800 for the serious violation of former WAC 296-155-505(6)(a).[6] We disagree.

---

[4] Neither party disputes that the height of the roof exceeded four feet, nor does either party argue that a railing was not required because of the presence of a ramp, stairway or fixed ladder.

[5] Though Chehalis assigns error to the Board's finding of fact 7, which finds the violation of former WAC 296-155-505(6)(a) to be a "serious" violation, Chehalis does not present argument on the issue of whether the Board properly found the violation was "serious." Br. of Appellant at 1. Consequently, we do not address the argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy Bd. v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[6] Here, the Board found that Chehalis' violation of former WAC 296-155-505(6)(a) was "serious." Consequently, the Department assessed a fine against Chehalis.

WISHA requires a penalty be assessed against an employer when the Department proves that an employer's violation is "serious." RCW 49.17.180(2); *J.E. Dunn Nw*, 139 Wn. App. at 44. We first review whether substantial evidence supports the Department's assessment of a penalty based on the factors in RCW 49.17.180(7). *Danzer v. Dep't of Labor & Indus.*, 104 Wn. App. 307, 319, 16 P.3d 35 (2000), *review denied*, 143 Wn.2d 1020 (2001). As stated earlier, substantial evidence is such evidence as is "sufficient to persuade a fair-minded person of the truth of the declared premise." *Id.* We then review the penalty amount for abuse of discretion. *Id.* at 326. Abuse of discretion is found where the "decision is arbitrary or rests on untenable grounds or untenable reasons." *Id.*

In determining the amount of the penalty to be assessed, the Department must consider: (1) the number of affected employees; (2) the gravity of the violation; (3) the size of the employer's business; (4) the good faith of the employer; and (5) the history of previous violations. RCW 49.17.180(7); *see also Danzer*, 104 Wn. App. at 320 (stating the same). WISHA dictated the base penalty to be assessed by "assigning a weight to a violation, called 'gravity.' Gravity is calculated by multiplying a violation's severity rate by its probability rate." Former WAC 296-900-14010 (2006). "Severity rates are based on the most serious injury . . . that could be reasonably expected to occur because of a hazardous condition." *Id.* "Severity rates are expressed in whole numbers . . . from 1 (lowest) to 6 (highest). Violations with a severity rating of 4, 5, or 6 are considered serious." *Id.* The "probability rate is a number that describes the likelihood of an injury . . . ranging from 1 (lowest) to 6 (highest)." *Id.* WISHA has assigned a base penalty dollar amount to each possible level of "gravity." *Id.* That base penalty is then subject to adjustment based on the employer's good faith, size, and history. *Id.*

11

Here, the Board found the proper penalty was $1,800. The Board came to this conclusion by finding the severity rating was 4 and the probability rating was 3. Thus, the gravity was 12, and the corresponding base penalty was $3,000. *Id.* That base penalty was then reduced by 40 percent because Chehalis has a workforce of 26-100 employees. *Id.* The Board found Chehalis' good faith and employment history to be "average," and so did not warrant any further reductions or increases. Thus, the Board found the proper penalty to be a 40 percent decrease in the base penalty of $3,000, which is $1,800.

On appeal, Chehalis challenges the Department's rating of its good faith as "average," and argues that the "probability rate," which contributes to determining the "gravity" of the violation, should be lower. Br. of Appellant at 25. But, before the Board, Chehalis only challenged the penalty on the Department's determination of the good faith factor.

RCW 49.17.150(1) prohibits appellate review of issues not first presented to the Board: "No objection that has not been urged before the [B]oard shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." RCW 49.17.150(1); *Legacy Roofing*, 129 Wn. App. at 361-62. Therefore, we only address Chehalis' challenge to the Department's determination of good faith. RCW 49.17.150(1); *Legacy Roofing*, 129 Wn. App. at 361-62.

To determine good faith, the Department would consider the employer's: (1) "Awareness of [the] act"; (2) "Effort before an inspection to provide a safe and healthful workplace for employees"; (3) "Effort to follow a requirement they have violated"; and (4) "Cooperation during an inspection, measured by a desire to follow the cited requirement and immediately correct identified hazards." Former WAC 296-900-14015 (Table 5).

12

Chehalis argues the Department "provided no evidence that Chehalis failed to meet the standard of any of the four 'good faith' factors,"[7] and asks this court to "reclassify Chehalis's good faith rating from 'fair' to 'excellent.'" Br. of Appellant at 27, 28. In support, Chehalis argues, "[n]o evidence was introduced by the Department which would contradict such a reclassification." Br. of Appellant at 28-29. However, Chehalis' request misunderstands our standard of review.

Here, the Department rated Chehalis' good faith as "average." CABR at 8; CABR-TR at 60, 69. The good faith factor considered the company's "[c]ooperation during an investigation." Former WAC 296-900-14015. The Department's inspector testified that although Chehalis provided him with everything he asked for in his investigation, there were "some holes" in the information he was provided. CABR-TR at 69. He also testified that there was "a little animosity at the beginning" of his investigation from Chehalis, which, was "kind of normal." CABR-TR at 69. The inspector said Chehalis received "an average" rating because the company's interactions with him were "what we normally see." CABR-TR at 69. Essentially, the inspector testified that Chehalis' cooperation was average and it was rated accordingly. This is sufficient evidence to persuade a fair-minded person that Chehalis' cooperation with the investigation was average.

Substantial evidence also supports the Department's assigning an average rating based on the other good faith factors. First, Chehalis was aware that Gilbert believed he needed help getting the compressor to the roof because Gilbert called the Chehalis dispatcher and requested such help. The testimony by Chehalis' manager, Mills, admitting to such knowledge is sufficient to persuade

_____

[7] Chehalis only presents argument on the fourth factor, its cooperation during an inspection. Under RAP 10.3(a)(6), we do not need to address the other factors, but because this court looks at the sufficiency of the evidence for the Board's determination, we include a brief review of the other three factors.

a fair-minded person that Chehalis was at least generally aware of Gilbert having to get the compressor on the roof by himself.

Second, Chehalis did not provide safety training to Gilbert, Chehalis conducted safety meetings on topics not relevant to the work Chehalis did, and attendance at the safety meetings was not required. Chehalis required its employees to sign a safety manual book, provided each van with "an L and I book," and provided the employees with a "laminated card in their van that tells them of the dos and don'ts of the van." CABR-TR at 81. This testimony presents sufficient evidence to persuade a fair-minded person that Chehalis did not put forth any better than average effort to provide a safe and healthful workplace for its employees.

Third, Chehalis did not provide Gilbert with any safety equipment or safety tools. The manager at Chehalis knew of the WAC in question and did not believe it applied to the work Gilbert was doing. The absence of any safety equipment or safety tools, and the manager's belief the requirement did not apply to the work being done, is sufficient evidence to persuade a fair-minded person that Chehalis did not put forth any better than average effort to follow the requirement that their employees have a standard railing on surfaces four feet or higher.

Therefore, we hold that substantial evidence supports the Board's finding that Chehalis' good faith rating should be "average." And, as such, we hold that the decision to uphold that finding was not "arbitrary or based on untenable grounds." *See Danzer*, 104 Wn. App. at 327 (holding, "As the Department based its penalty calculation on the factors in RCW 49.17.180(7) and substantial evidence supports the calculations, they are not arbitrary or abased on untenable grounds.")

14

D.      WAC 296-876-40025—"LADDER REGULATION"

The Department cross-appeals the superior court's decision to vacate the citation for a serious violation of WAC 296-876-40025.  WAC 296-876-40025 states, in relevant part, "You must have both hands free to hold on to the ladder."  The Department argues that substantial evidence supports the Board's findings that Gilbert climbed the ladder while not keeping both hands free because reasonable inferences in support of that finding can be drawn from the testimony presented.  We agree with the Department.

In ruling that the Board's findings that Gilbert did not keep both hands free to climb the ladder were not supported by substantial evidence, the superior court concluded:

> This Court concludes that there was no testimony that Mr[.] Gilbert carried the HVAC in his hands or any testimony that he failed to keep three points on the ladder at any point in time.  While this Court believes that the HVAC was too heavy to be roped and tied to his belt or strapped to his tool belt, the Court is not convinced that a backpack could not have been utilized by Mr[.] Gilbert to climb this ladder thus freeing his hands and feet at all times.  Therefore, this Court finds that Findings of Fact 3 and 4 are not supported by substantial evidence and the violation alleged to be committed for violation of WAC 296-876-40025 is hereby dismissed[.]

CP at 65.  This is an improper application of the standard of review.  Under the proper standard of review, the Board's findings are conclusive if they are supported by substantial evidence.  RCW 49.17.150(1); *J.E. Dunn N.W.*, 139 Wn. App. at 43.  "Substantial evidence is evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *J.E. Dunn N.W.*, 139 Wn. App. at 43 (quoting *Holland*, 90 Wn.2d at 390-91).  The evidence and reasonable inferences therefrom are viewed in the light most favorable to the Department because it prevailed before the Board. *Erection Co.*, 160 Wn. App. at 202.

The superior court's suggestion that a backpack might have been used, and Chehalis' various suggestions as to how Gilbert could have gotten the compressor up the ladder while keeping his hands free, require speculation upon the existence of facts outside the record and require viewing the evidence in the light most favorable to Chehalis. As both parties point out, "Reviewing courts 'may not speculate upon the existence of facts that do not appear in the record.'" Reply Br. of Appellants at 4 (quoting *State v. Blight*, 89 Wn.2d 38, 46, 569 P.2d 1129 (1977)); Br. of Resp't/Cross-Appellant at 13 (citing *Harrison v. Whitt*, 40 Wn. App. 175, 177, 698 P.2d 87 (1985)). And, the evidence and its inferences are to be viewed in the light most favorable to the Department. *Erection Co.*, 160 Wn. App. at 202.

Here, Gilbert testified that he picked up the compressor, carried it out of the van, and "carried it up [the ladder] as safely as I could at waist level," "one step at a time." CABR-TR at 15, 37. Gilbert also testified that he was not provided with any safety equipment, ropes, or harnesses. There was no evidence that any equipment could be or was used to hoist the compressor to the roof. Based on the testimony presented, a fair-minded person could reasonably conclude that Gilbert did not keep both hands free to hold onto the ladder, as WAC 296-876-40025 requires. Consequently, we hold the superior court erred in finding substantial evidence did not support the Board's finding that Gilbert did not keep both hands free while climbing the ladder.

Similarly, we hold that the Board's finding that the violation of WAC 296-876-40025 was "serious" was supported by substantial evidence. The only element disputed before this court is whether Chehalis knew, or should have known, of the violative condition.[8]

---

[8] The other elements are clearly met. First, the cited standard is WAC 296-876-40025 and it applies because Gilbert was climbing a ladder. Second, the Board found that Gilbert did not meet

The Department argues that, before the Board, "Chehalis only argued that the Department did not prove that Gilbert did not have his hands free on the ladder," and therefore, Chehalis has waived any arguments as to the other elements. Br. of Resp't/Cross-Appellant at 15-16. Chehalis does not contend that it raised the element of its knowledge before the Board. Instead, Chehalis ignores the Department's argument on this point and proceeds to argue in its appeal that the Department did not prove Chehalis knew or could have known of the violative condition.

Because Chehalis did not present argument to the Board as to whether Chehalis knew or could have known of the violative condition, Chehalis is prohibited from raising the issue for the first time on appeal.

> In general, we will not review claims of error not raised below. RAP 2.5(a). More importantly, RCW 49.17.150(1) specifically limits appellate review of issues that an appellant did not first present to the Board: 'No objection that has not been urged before the board shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.'

*Legacy Roofing*, 129 Wn. App. at 361-62 (quoting RCW 49.17.150(1)). Consequently, substantial evidence supports the Board's determination that Chehalis committed a "serious" violation of WAC 296-876-40025.

E.    ATTORNEY FEES

To the extent that Chehalis requests attorney fees on appeal, this request is not properly presented. RAP 18.1(b) "requires a party to include a separate section in her or his brief devoted to the request" for appellate attorney fees. *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9

---

the requirement of keeping both hands free, which is supported by substantial evidence. Third, neither party disputes that Gilbert was Chehalis' employee and was exposed to the condition by using a ladder in his employment. Lastly, neither party argues that serious physical harm would not result.

(2012), *review denied*, 175 Wn.2d 1016 (2012). This requirement is mandatory and "requires more than a bald request for attorney fees on appeal." *Stiles*, 168 Wn. App. at 267.

Here, Chehalis does not present argument on the attorney fees issue. Chehalis has not met the mandatory requirements for requesting attorney fees on appeal, and we deny the request.

CONCLUSION

We hold that substantial evidence supports the Board's findings, and we affirm the Board's findings that (1) Chehalis violated the railing regulation (former WAC 296-155-505(6)(a)), (2) the penalty amount arising from the railing violation was proper, and (3) Chehalis violated the ladder regulation (WAC 296-876-40025).

A majority of the panel determining that this opinion will not be published in the Washington Appellate Report, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                                 _____

                                                                     Lee, J.

We concur:

_____
                Maxa, P.J.

_____
                Sutton, J.