IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GARY FLANZER,<br><br>    Appellant,<br><br>   v.<br><br>ELADIO FLORES,<br><br>    Respondent. | No. 82896-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Gary Flanzer appeals the trial court's decision on revision to vacate a domestic violence protection order (DVPO), which he had obtained from a commissioner. Flanzer fails to show that the trial court was manifestly unreasonable or the basis of its decision legally or factually untenable when it determined that he had not sustained his burden to establish that domestic violence occurred. Therefore, we affirm.

## I. FACTS

In February 2021, Flanzer petitioned for a DVPO protecting him from his spouse, Eladio Flores. At the time, Flanzer and Flores were in the process of dissolving their eight-year-long marriage and were living in separate bedrooms in a shared condo.

By way of summary: Flanzer first alleged that Flores had committed domestic violence by assaulting Flanzer and taking his cell phone during a February 22, 2021 incident to which police responded (cell phone incident). Flanzer alleged he was an "elder adult with [a] disability" and the cell phone

Citations and pin cites are based on the Westlaw online version of the cited material.

incident "instill[ed] fear of [his] safety."

Second, Flanzer alleged that Flores "abused [him] with abusive sexual contact resulting in surgery." He later provided medical records from 2014 and 2015 indicating that he had been diagnosed with medical conditions, which he attested were caused by Flores's sexual abuse. Flanzer declared that he did not tell his doctor about Flores's sexual abuse because he was dependent on Flores for health insurance.

Third, Flanzer alleged in a supplemental declaration that on February 15, 2015, Flores "hit [him] in the face during an argument at a fast food drive thru" (fast food incident). Flanzer attached photographs of injuries he allegedly sustained during the fast food incident; he also attested that "Jan Dickson was a witness" to the incident.[1]

In response to Flanzer's petition, and also by way of summary, Flores submitted a declaration in which he denied assaulting Flanzer during the cell phone incident. According to Flores,

> As part of our discussion about splitting up, I asked [Flanzer] about

---

[1] In addition to the foregoing allegations, Flanzer claimed among other things that Flores changed the code on the thermostat in either December 2020 or 2021 "so [Flanzer] had no heat"; threatened to take Flanzer's medications away and committed "theft of a controlled substance" on February 20, 2021; intimidated Flanzer by text with "foul language"; and threatened to take away Flanzer's health insurance. The trial court later determined that Flanzer's "other allegations . . . , even if considered true and taken together, do not meet the definition of 'domestic violence' as contemplated under Washington law." Flanzer does not assign error to this determination or provide any argument in support of any such assignment of error. So, we do not discuss these additional allegations further. See Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."); see also RAP 10.3(a)(6) (requiring appellant's brief to contain "argument in support of the issues presented for review").

our Joint Crypto Currency account. [Flanzer] has always held closely the information about our Coin Base account saying that he would take care of our jointly held account. He would not share this information with me. . . . I grabbed his phone to look at the Coin Base account. He became very vocal and upset, so I immediately returned the phone to him. I did not touch [Flanzer] at all.

Flores also denied sexually abusing Flanzer, declaring that the surgery was required because of a condition that predated the couple's relationship. Flores declared further that in the 15 years he and Flanzer had been together, Flanzer had never mentioned having a disability, and "[a]s to the elderly comment, [Flanzer] is always bragging how young and fit he is [and] takes questionable supplements to enhance youth." Flores claimed Flanzer was "very angry that [Flores was] parting ways from him and he wants to get back at me one way or the other," and that "[t]his is a way to retaliate by making false accusations . . . of assault." Flores attested that Flanzer "has stated on several occasions that he would 'get [Flores] put in jail' [and] has threatened [Flores] with loss of [his] long-term employment and ruining [him]."

In addition to his own declaration, Flores submitted multiple declarations from friends and family members describing interactions they had witnessed between Flores and Flanzer. Multiple witnesses declared they had observed Flanzer physically or verbally abusing Flores. Among these was Jan Dickson, who attested to witnessing an altercation between Flores and Flanzer "that became physically violent and was not initiated by Mr. Flores as he was having to defend himself from being attacked by Mr. Flanzer."

On April 8, 2021, Flanzer's DVPO petition came before a commissioner for a telephonic hearing. Flanzer did not testify, but Flores did. He testified among

3

other things that he was in Atlanta on February 15, 2015, the day of the alleged fast food incident. The commissioner determined that "[Flanzer] is more credible than [Flores]," granted Flanzer's petition, and entered a two-year DVPO protecting Flanzer from Flores.

Flores moved for revision, which the trial court granted after hearing argument from the parties and reviewing the recorded telephonic hearing before the commissioner. In its order granting revision, the trial court determined that the alleged assault during the February 2021 cell phone incident was not proven by a preponderance of the evidence. The court further found that Flanzer's sexual abuse allegation "has not been shown to be true by a preponderance of the evidence." Among other considerations, the court also observed that Flores had denied Flanzer's allegations and had submitted declarations from a number of friends who stated that Flores was "never volatile or violent" with Flanzer but that Flanzer was "erratic and verbally abusive" to Flores. And, the trial court observed, Flores and his witnesses "denied that [Flanzer] is disabled."

The trial court finally also determined that the 2015 assault during the fast food incident had not been proven by a preponderance of the evidence, explaining that "[t]he one apparent eyewitness . . . , Jan Dickson, described an act of self-defense by [Flores]," and "[w]hile this is inconsistent with [Flores]'s testimony (he said he was in Florida [sic]), it does not support [Flanzer']s allegation."

"In summary," the court concluded, "[Flanzer] has not met his burden to show by a preponderance of the evidence that domestic violence has occurred, warranting a two year protection o[r]der." Thus, the court vacated the DVPO.

Flanzer appeals.

## II. ANALYSIS

Flanzer contends the trial court erred by granting the motion for revision which vacated the DVPO. We disagree.

### A. Standard of Review

In this appeal, we review the trial court's decision on revision; not the commissioner's order. In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). And we review a trial court's decision whether to grant or deny a motion for revision on a DVPO for abuse of discretion. See In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016) ("A trial court's decision to grant a protection order is a matter of judicial discretion."). The trial court abuses its discretion when its decision is manifestly unreasonable, or when it exercises its discretion on untenable grounds or for untenable reasons. T.W.J., 193 Wn. App. at 6. Where, as here, the trial court has weighed the evidence, our role is limited to determining whether substantial evidence supports the court's findings of fact and whether those findings support the court's conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wn.2d 150, 155, 385 P.2d 727 (1963).

Importantly, we defer to the trial court on issues of conflicting evidence,

witness credibility, and the persuasiveness of the evidence, Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), and "[w]e will not substitute our judgment for that of the trial court, even if we might have resolved the factual dispute differently." Nguyen v. City of Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

B. Flanzer Does Not Show That the Trial Court Erred by Vacating the DVPO

Chapter 26.50 RCW authorizes a victim of domestic violence to petition the court for an order of protection.[2]  Former RCW 26.50.030 (2005).  The petitioner must allege "the existence of domestic violence" and provide an affidavit "under oath stating the specific facts and circumstances from which relief is sought." Former RCW 26.50.030(1).  "Domestic violence" means, as relevant here, "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, [or] sexual assault . . . of one [spouse] by [another spouse]."  Former RCW 26.50.010(3), (7) (2019).[3]

A determination that the petitioner failed to establish that domestic violence occurred supports a legal conclusion that a DVPO is not warranted.  See Former

---

[2] The legislature repealed this chapter effective July 1, 2022, as part of legislation that reorganized various civil protection order statutes into a new RCW chapter.  See LAWS OF 2021, ch. 215, §§ 1, 170(94)-(126); see also chapter 7.105 RCW.  Because that legislation was not yet in effect at the time of the proceedings below, we refer herein to the relevant, but since repealed, statutes as if still in effect.

[3] Flanzer points out, that the definition of "domestic violence" was recently amended to add "coercive control."  LAWS OF 2022, ch. 268, § 1 (codified at RCW 7.105.010(9)).  But as Flanzer acknowledges, coercive control was not a statutorily recognized form of domestic violence at the time of the proceedings below.  Thus, we need not and do not consider whether Flores's alleged conduct constituted coercive control.

RCW 26.50.030 (DVPO exists for protection in cases of domestic violence). To this end, and as an initial matter, Flores argues that we must affirm because Flanzer did not assign error to the trial court's findings that Flanzer's allegations "were not credible and 'did not occur,' " thus rendering these findings verities on appeal. But the trial court did not find that the conduct of which Flanzer accused Flores "did not occur." Instead, the trial court vacated the DVPO on the basis that Flanzer "has not met his burden to show by a preponderance of the evidence that domestic violence *has* occurred." (Emphasis added.) And Flanzer plainly assigned error to this determination. So, we decline Flores's invitation to affirm on the basis of Flanzer's allegedly insufficient assignments of error.

Nevertheless, we affirm because Flanzer's arguments in support of his assignments of error primarily ask us to reweigh conflicting evidence largely left to the discretion of the trial judge and, thus, are unavailing on appeal. See Thompson, 142 Wn. App. at 60 ("An appellate court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses"); see also In re Dependency of B.S.S., 56 Wn. App. 169, 171, 782 P.2d 1100(1989) (a superior court reviewing a commissioner's decision "has full jurisdiction over the case and its power of review is essentially unlimited").

For example, Flanzer argues that the trial court erred inasmuch as it failed to find that Flores sexually assaulted him. In support of his claim of sexual assault, Flanzer declared that Flores "was sexually abusive . . . and got pleasure from hurting [Flanzer]." Flanzer's medical records confirmed he underwent two

7

surgeries in 2014 and in 2015, and Flanzer declared that his conditions were caused by Flores's sexual abuse. He also declared that Flores "spent over one thousand dollars" to take measures to audibly conceal his sexual assaults from his neighbors.

But at the trial court level, Flores denied sexually assaulting Flanzer, declaring under oath that Flanzer's accusation of abusive sexual contact was a "lie." Flores declared that he had "nothing to do with" causing Flanzer's medical condition, attesting that, when Flores first was intimate with Flanzer in 2005, Flanzer disclosed the preexisting condition and consented to the intimacy. Flores further declared that, as their relationship proceeded, Flanzer repeatedly declined to have surgery for reasons independent of their intimacy and ultimately did so for his own reasons. Furthermore, Flanzer pointed the trial court to nothing in his medical records indicating that the diagnosed conditions could be—much less were—caused by sexual activity (consensual or not). Indeed, one of the records suggests that the risk factors for the condition were things such as "chronic coughing."

In short, there was conflicting evidence in the record as to whether Flores sexually assaulted Flanzer[4] and whether Flanzer's medical conditions were linked to Flores's alleged sexual assault. Again, it was the exclusive province of the trier of fact—here, the trial court—to weigh this evidence and determine whether

---

[4] Flanzer does not dispute that his consent to Flores's sexual conduct would preclude a finding of domestic violence, arguing that "Mr. Flores admitted sexual contact occurred, so the question left was whether Mr. Flanzer consented to the sexual conduct."

Flanzer's evidence was persuasive enough to satisfy his burden to show that domestic violence occurred. The trial court's determination that it was not will not be disturbed on appeal. See Yorkston v. Whatcom County, 11 Wn. App. 2d 815, 831, 461 P.3d 392 (2020) ("Although the trier of fact is free to believe or disbelieve any evidence presented at trial, " '[a]ppellate courts do not hear or weigh evidence, find facts, or substitute their opinions for those of the trier-of-fact.' " (alteration in original) (quoting Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009))).

In support of reversal, Flanzer also points to several types of additional evidence that he claims the trial court did not weigh sufficiently, including for example:

- that there was a "clear contradiction" between Flores's statement to police about the February 2021 cell phone incident and his later declaration; and

- that he provided images of his injuries from the fast food incident and that Dickson contradicted Flores's claim that he was in Atlanta on the day of the incident.

But, again, Flanzer's argument that this evidence was not sufficiently weighed, individually and or cumulatively, invites us to reweigh the conflicting evidence in a manner more favorable to him, which we will not do. Burnside v. Simpson Paper Co., 66 Wn. App. 510, 526, 832 P.2d 537 (1992) ("Where there is conflicting evidence, it is not the role of the appellate court to weigh and evaluate the evidence."), aff'd, 123 Wn.2d 93, 864 P.2d 937 (1994).

Separately, Flanzer asserts for the first time in his reply brief that the trial

court abused its discretion inasmuch as it failed to weigh the evidence *at all*, asserting that "the lack of any weighing of competing evidence or resolving conflicts in its findings demonstrates the revision court abused its discretion." But it is apparent from the trial court's order on revision that it weighed the evidence. For example, the trial court expressly weighed Flanzer's allegation that Flores assaulted him during the fast food incident against Dickson's declaration describing an act of self-defense by Flores. While the trial court may not have addressed every single piece of evidence Flanzer presented, even Flanzer concedes the court was not required to do so.

Flanzer also asserts that the trial court abused its discretion because it "appeared to require that Mr. Flanzer have reported his sexual assaults to his medical providers, yet did not give any weight to Mr. Flanzer reporting his sexual assaults to law enforcement in 2021." The trial court opened itself to this claim by stating that "in and of itself" this failure to disclose his abuse to his providers may "have been dispositive" of the issue and it otherwise was "illuminating." It may have been reversible error had the trial court imposed such a requirement, and it is nonetheless troubling to suggest that a victim's decision not to disclose abuse to their providers is anything other than a neutral fact. But ultimately, the court did not rest its decision on such musings. Indeed, the trial court expressly recognized that "domestic violence victims will often not share how they have received injuries." The trial court instead considered a variety of facts that were within its discretion to do as the trier of fact, and Flanzer cites no authority to the contrary.

The trial court was also within its discretion to give little or no weight to the

fact that Flanzer told law enforcement about Flores's alleged assaults in 2021, particularly in light of Flores's uncontroverted testimony that by that time, Flanzer was "very angry" that Flores was leaving him and "stated on several occasions that he would 'get [Flores] put in jail' " and threatened Flores "with the loss of [his] long-term employment and ruining [him]." Harrison v. Whitt, 40 Wn. App. 175, 178-79, 698 P.2d 87 (1985) ("Where evidence is conflicting, the trier of fact may believe the testimony of some witnesses and disbelieve the testimony of others, as well as draw from the evidence any reasonable inferences fairly deducible therefrom.").

As a final matter, Flanzer points to the purpose of the DVPO statutes and argues that the trial court's decision violates the public policy in favor of "the civil protection order process being low-barrier for survivors of domestic violence." But as Flores points out, the DVPO statutes still place the burden on the petitioner to establish by a preponderance of the evidence that domestic violence occurred. See Reese v. Stroh, 128 Wn.2d 300, 312, 907 P.2d 282 (1995) (burden of proof in civil cases is a preponderance of the evidence); City of Tacoma v. State, 117 Wn.2d 348, 351-52, 816 P.2d 7 (1991) (DVPO is a civil remedy); State v. Otis, 151 Wn. App. 572, 578, 213 P.3d 613 (2009) ("Preponderance of the evidence means that considering all the evidence, the proposition asserted must be more probably true than not true."). Flanzer does not persuade us that, because of policy considerations, we should not hold him to that burden or grant reversal where, as here, the trial court weighed the conflicting evidence and determined that Flanzer failed to sustain that burden.

We affirm.

Díaz, J.

WE CONCUR:

Smith, a.c.j.